**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 27 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DARRYL E. MONTGOMERY,

Defendant-Appellant.

No. 02-5215
(Northern District of Oklahoma)
(D.C. No. 01-CR-30-H)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **McWILLIAMS**, and **O'BRIEN**, Circuit Judges.

I.    INTRODUCTION

Defendant Darryl E. Montgomery pleaded guilty to filing false income tax returns in violation of 18 U.S.C. § 287.  Before sentencing, Montgomery sought to withdraw his guilty plea and have the trial judge disqualified.  The district court denied both motions and then sentenced Montgomery to the statutory maximum after making an upward departure from the range established in the

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

United States Sentencing Guidelines. Montgomery appeals, arguing that the trial judge should have disqualified himself, erred by departing upward, and erred by failing to comply with Federal Rule of Criminal Procedure 32(i)(3).[1] This court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a) and **affirms** the district court's denial of the motion to disqualify and the upward departure, but **remands** for the sole purpose of allowing the district court to reduce to writing its Rule 32 findings.

## II.    BACKGROUND

While serving a sentence of life without parole in a state prison, Montgomery recruited the assistance of relatives and friends to obtain information about other inmates. He would then file fraudulent income tax returns using that information and cash the refund checks. Montgomery and three other individuals were indicted for the tax fraud scheme. Rick Couch was appointed as Montgomery's attorney. Montgomery initially entered a plea of not guilty, but after discussions with his counsel decided to change his plea. Montgomery pleaded guilty pursuant to a plea agreement.

The district court scheduled Montgomery's sentencing for January 8, 2002. Prior to that hearing, Montgomery sent the district court a letter requesting a new lawyer because Couch had allegedly used a racial epithet in reference to

---

[1] Formerly this provision was contained in Fed. R. Crim. P. 32(c).

Montgomery during an argument. Couch moved to withdraw. On January 8, after hearing from Couch and the government, but before hearing from Montgomery, the district court judge stated:

> I have known Mr. Couch for many years, and like you [the Assistant United States Attorney], I have the highest regard for him and . . . I don't credit the allegation that he has made racial epithets to this defendant . . . . [W]hat are we to do with a defendant who will prolong proceedings by making allegations that [no one] believes to be true?

The district court stated that it did not credit Montgomery's accusation concerning Couch, but allowed Couch to withdraw because his professional relationship with Montgomery had deteriorated. The court then rescheduled Montgomery's sentencing for September 27, 2002, and orally ordered that the Federal Public Defender appoint new counsel for Montgomery. The court specifically asked Montgomery if the delay in sentencing was acceptable and Montgomery responded, "I'm already in prison, that's not going to hurt anything." Montgomery, however, made repeated requests to remain in federal custody pending the appointment of his new attorney. The district court refused and sent Montgomery back to the state penitentiary. No written order requiring the appointment of new counsel was docketed until June 21, 2002. Montgomery's new counsel was appointed four days later.

After the appointment of new counsel, Montgomery filed a motion to withdraw the guilty plea, objections to the presentence investigation report

-3-

("PSR"), and a motion to disqualify the district judge. The district court referred the motion to withdraw the plea and the motion to disqualify to a magistrate judge for a report and recommendation. After holding a hearing, the magistrate judge recommended the motions be denied. Montgomery filed objections. The district court overruled the objections and adopted the recommendation. Sentencing was set for December 12, 2002.

At the December 12, 2002 sentencing hearing, the district court heard testimony and argument concerning Montgomery's objections to the PSR and the government's motion for an upward departure. The government presented the testimony of an Internal Revenue Service ("IRS") agent to show that Montgomery was a leader and organizer of at least five other people in the tax fraud scheme. In addition, the agent testified that there was substantial evidence indicating that Montgomery was planning to attempt the same scheme again. The district court rejected Montgomery's objections to the PSR and granted the government's motion for an upward departure.

The district court calculated Montgomery's criminal history category as VI and his offense level as twenty-three, including an increase for Montgomery's role as a leader. *See U.S. Sentencing Guidelines Manual*, § 3B1.1 (1998)[USSG]. The district court concluded an upward departure under USSG § 4A1.3 from the offense level established by the Guidelines was warranted for two reasons: (1)

Montgomery's extensive criminal history gave him far more points than needed to meet criminal history category VI and (2) there was a strong likelihood that Montgomery would repeat his crimes. The district court departed upward, adding two points to the offense level, resulting in an applicable guideline range of 110 to 137 months' incarceration. The district judge sentenced Montgomery to the statutory maximum of 120 months' incarceration and Montgomery appealed.

## III.  DISCUSSION

### A.  The Motion for Recusal

This court reviews the denial of a motion to recuse for an abuse of discretion. *Bryce v. Episcopal Church*, 289 F.3d 648, 659 (10th Cir. 2002). In reviewing a decision regarding recusal, the analysis is necessarily "extremely fact driven." *Nichols v. Alley*, 71 F.3d 347, 352 (10th Cir. 1995). "The test is whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality." *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987).

Montgomery argues the district judge erred by failing to recuse himself because a reasonable person would have concluded the judge's conduct gave the appearance of bias. Montgomery relies on 28 U.S.C. § 455(a), which requires a judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Under section 455(a), a trial judge must recuse

himself whenever there is an appearance of bias, regardless of whether there is any actual bias. *Bryce*, 289 F.3d at 659.

Montgomery asserts that the district judge's comments at the January 8, 2002 hearing indicate the judge was offended by Montgomery's allegation that Couch had used a racial epithet because the judge had a *personal* regard for Couch. Montgomery notes that the judge stated "I have the highest regard for [Couch] and . . . I don't credit the allegation that he has made racial epithets to this defendant."

A review of the transcript, however, reveals that the judge's commentary about Couch reflected the judge's concern that Couch's withdrawal be based on a poor relationship with Montgomery and not on the allegation concerning racial bigotry. "[M]y concern is the desire to make sure that any change of attorney is identified to the fraying of the relationship, not to a crediting of the allegations." The judge's refusal to credit the allegations does not indicate a bias against Montgomery because a credibility determination regarding the statements was relevant to the decision concerning the motion to withdraw.

Furthermore, Couch's testimony at the hearing regarding the motion to disqualify refuted Montgomery's assertion that the judge had anything more than a *professional* regard for Couch. Couch testified that he had no social interactions with the judge and did not have any dealings with the judge outside

-6-

of work as a public defender. Accordingly, there is no support for Montgomery's contention that the judge was personally offended by the allegation concerning Couch.

Montgomery also argues that the district judge's bias is reflected by the failure to file a written order mandating the appointment of a new attorney until five months after Couch withdrew. Montgomery asserts that the district court's refusal to allow Montgomery to remain in federal custody pending the appointment of a new attorney reveals the court's intention to punish Montgomery by cutting off his access to an attorney for an extended period. A review of the record makes clear there is no evidence of bias.

At the January 8th hearing, during which the court allowed Couch to withdraw, the court stated, "I will hereby order that the Federal Public Defender appoint from the panel new counsel to replace Mr. Couch . . . ." The magistrate judge assigned to give a report and recommendation on the motion to disqualify concluded that the failure to enter a written order was nothing more than an unfortunate administrative error. Moreover, during the period when Montgomery was without an attorney no court proceedings occurred so Montgomery was not forced to appear without counsel. Thus, the district court intended to appoint a new attorney on January 8, 2002, and its failure to enter a written order was not designed to punish Montgomery.

Montgomery argues that whether the delay was intentional or not is unimportant. Montgomery asserts that the extended delay in the appointment of counsel makes the appearance of bias a natural conclusion. Montgomery's argument, however, ignores the appropriate test. The appearance of bias must be reasonable in light of all the facts, not just the facts selected by the defendant. *Hinman*, 831 F.2d at 939. Whether the delay was intentional or not is a fact relevant to a conclusion concerning the appearance of bias, and here the unintentional nature of the delay suggests that there was no bias. *See id.*

Finally, Montgomery contends that the delay in holding a sentencing hearing, together with the district court's upward departure, reflects bias. That argument is undercut, however, by Montgomery's explicit acceptance of the delay at the January 8th hearing. Indeed, a review of the record suggests that the district court delayed sentencing for Montgomery's benefit so that newly appointed counsel would have time to prepare.

In sum, the district judge's commentary at the January 8th hearing does not reflect bias, the delay in appointment of counsel was unintentional, and Montgomery did not protest the delay in sentencing. Accordingly, there is no reasonable basis to harbor doubts about the appearance of impartiality and the district court did not abuse its discretion in denying the motion for disqualification.

-8-

**B.      The Upward Departure**

This court has noted Congress' recent modification of the standard of review for departures from the sentencing guidelines. *See United States v. Jones*, 332 F.3d 1294, 1299-1300 (10th Cir. 2003). Under the new standard of review, whether the district court based a departure on a permissible factor and whether it provided the written statement of reasons now required for a departure is to be reviewed *de novo*. *Id.* Whether a permissible departure was reasonable, however, is reviewed for abuse of discretion. *Id.* The district court's factual findings are reviewed for clear error. *Id*. at 1300 n. 9.

**1.      Whether the district court stated its reasons for departure with specificity**.

Under 18 U.S.C. § 3553(c)(2), a district court must set forth its reasons for departure with specificity in a written order of judgment. Montgomery's contention that the district court made no written findings is simply incorrect. The district court's written judgment appended to the PSR states the court's basis for the departure: "The defendant has far more criminal history points than is required for Criminal History Category Six. Reliable information exists that the defendant will commit future offenses . . . . Therefore, pursuant to USSG § 4A1.3, an upward departure . . . is warranted . . . ."

Montgomery argues that the district court did not make the findings required by the Guidelines. Montgomery notes that in *United States v. Akers*, the

-9-

district court gave a detailed explanation of why a departure under § 4A1.3 was warranted. 215 F.3d 1089, 1105 (10th Cir. 2000). It is true that the district court's findings justifying the departure are less extensive in this case than those found in *Akers*. The statute, however, requires only that the stated reasons be specific. 18 U.S.C. § 3553(c)(2). Because the district court articulated two explicit reasons for the departure, we conclude that the district court's statement was sufficiently specific.

### 2. Whether the district court relied on permissible factors as a basis for departure.

A factor is a permissible basis for departure if it "advances the objectives set forth in [18 U.S.C. §] 3553(a)(2)," "is authorized under 18 U.S.C. § 3553(b)," and "is justified by the facts of the case." 18 U.S.C. § 3742(j)(1).

### a. Whether the sentence advanced the objectives of 18 U.S.C. § 3553(a)(2).

In making its departure, the district court relied on two factors: (1) Montgomery's criminal history was under-represented by criminal history category VI; and (2) there was a substantial likelihood Montgomery would commit the same crimes in the future. Given that the district court considered the likelihood that Montgomery would repeat his criminal behavior, the sentence imposed advanced the objectives of "promot[ing] respect for the law," and

"protect[ing] the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2).

**b.  Whether the departure was permissible under 18 U.S.C. § 3553(b).**

Relying on *United States v. Riera*, 298 F.3d 128 (2nd Cir. 2002), Montgomery argues that an upward departure based on criminal history and the likelihood of future criminal activity is not permissible under the Guidelines. Montgomery's argument misstates the holding in *Riera*. The court in *Riera* determined that the district court's upward departure under USSG § 5K2.0 was inappropriately based on the defendant's criminal history and propensity to recidivate. *Riera*, 298 F.3d at 132. The court stated, however, that "[w]hile a horizontal departure pursuant to U.S.S.G. § 4A1.3 may well be a permissible means to account for such prior conduct, a § 5K2.0 departure based on recidivism concerns is allowed only [if certain findings are made]." *Id.* Thus, *Riera* does not support the notion that a departure is inappropriate if the requirements of § 4A1.3 are met.

Indeed, § 4A1.3 explicitly states that the district court may depart upward "[i]f reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." USSG § 4A1.3. Because the Commission explicitly authorized departures under USSG § 4A1.3, it

-11-

acknowledged there would be cases where the criminal history category fails to accurately represent the defendant's criminal conduct or the likelihood of recidivism. *Akers,* 215 F.3d at 1104. Thus, the factors relied on by the district court were specifically authorized by 18 U.S.C. § 3553(b). *Id.*

Montgomery also argues that even if an upward departure is permissible, under USSG § 4A1.3 the court cannot adjust the offense level but only the criminal history category. Montgomery's contention is contradicted by the Guidelines themselves. The policy statement appended to § 4A1.3 indicates that if the defendant has a criminal history category of VI and an upward departure is warranted, "the court should structure the departure by moving incrementally down the sentencing table to the next higher offense level . . . until it finds a guideline range appropriate to the case." USSG § 4A1.3. In this case, Montgomery was classified under category VI prior to any departure and, thus, the district court's increase of the offense level was permissible.

c.      **Whether the departure was justified by the facts**.

At the sentencing hearing, the district court heard testimony that after his indictment in this case Montgomery had been repeatedly found in possession of tax forms along with the names and social security numbers of other prisoners. A government agent testified that Montgomery had recruited an individual to receive refund checks and tax materials on his behalf. The government agent also

testified that Montgomery stated the IRS would need to monitor him every tax year because he planned to continue his illegal activities. Moreover, there was evidence that Montgomery was planning other types of crimes, including the shipment of illegal drugs.

Montgomery's extensive criminal history also supports the district court's conclusion that the criminal history category did not accurately represent his past. As already noted, Montgomery had a total of twenty-four criminal history points, twice what is needed to be classified under category VI. Many of the convictions involved conduct similar to the tax fraud scheme in this case. Beginning at age eighteen, Montgomery consistently took part in offenses involving fraud and deception. Over an eighteen-year period of constant criminal behavior, he was convicted no less than eight times for crimes relying on deception for pecuniary gain. The district court explicitly relied on the testimony at sentencing and the defendant's criminal history to find that category VI under-represented his past conduct and that there was reliable evidence that Montgomery would commit other crimes. Because the district court's findings were well-supported by the evidence, its decision to depart was proper.

**d.  Whether the degree of departure was reasonable.**

In reviewing the reasonableness of the district court's degree of departure for an abuse of discretion, this court looks to "the seriousness of the offense, the

need for just punishment, deterrence, protection of the public, correctional treatment, the sentencing pattern of the Guidelines, . . . and the need to avoid unwarranted sentencing disparities." *United States v. Jones*, 332 F.3d 1294, 1305 (10th Cir. 2003) (quotation omitted*)*. When the defendant has a history of repeated criminal conduct, a district court should consider the need "that a clear message be sent to society that repeated criminal behavior will aggravate the need for punishment with each recurrence." USSG Ch.4, Pt. A intro. comment. Given these considerations and the district court's finding concerning Montgomery's potential for recidivism, we conclude that the district court's two level upward departure was not an abuse of discretion.

**C.     The Failure to Make Written Findings Concerning the Presentence Investigation Report**.

Montgomery argues that the district court failed to make findings concerning his objections to the PSR as required by Federal Rule of Criminal Procedure 32 and that the district court also violated Rule 32 by failing to reduce its findings to writing.

We review a district court's compliance with the Federal Rules of Criminal Procedure *de novo*. *United States v. Kravchuk*, 335 F.3d 1147, 1160 (10th Cir. 2003). Federal Rule of Criminal Procedure 32 mandates written findings

regarding any contested parts of the PSR.[2]  *Id.*  Findings made on the record are not sufficient.  *Id.*

At the sentencing hearing, Montgomery made six objections to the PSR. The district court addressed each of Montgomery's objections on the record and rejected all of them.  Thus, Montgomery's contention that the district court failed to make express findings is incorrect.  The district court, however, did fail to reduce its conclusions on these matters to writing.  Accordingly, we **remand** to the district court solely for the ministerial task of reducing its Rule 32 findings to writing.  *Kravchuk*, 335 F.3d at 1161.

## V.    CONCLUSION

For the foregoing reasons, this court **affirms** the district court's denial of the motion to disqualify, **affirms** Montgomery's sentence, but **remands** so that the district court may complete the ministerial task of reducing to writing its

---

[2] Rule 32(i)(3) states that the district court must "for any disputed portion of the presentence report or other controverted matter--rule on the dispute or determine that a ruling is unnecessary . . . and (C) must append a copy of the court's determinations under this rule to any copy of the presentence report made available to the Bureau of Prisons."  Fed. R. Crim. P. 32(i)(3).

findings regarding Montgomery's objections to the presentence investigation report.

ENTERED FOR THE COURT

Michael R. Murphy
Circuit Judge