RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0187P (6th Cir.)
File Name: 04a0187p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*

EDWARD CARTER,
*Defendant-Appellant.*

No. 02-1511

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 00-80692—Victoria A. Roberts, District Judge.

Argued: September 19, 2003

Decided and Filed: June 22, 2004

Before: BOGGS, Chief Judge; and NORRIS and CLAY,
Circuit Judges.

———————

## COUNSEL

**ARGUED:** Suzanna Kostovski, Detroit, Michigan, for
Appellant. Daniel L. Lemisch, ASSISTANT UNITED
STATES ATTORNEY, Detroit, Michigan, for Appellee.
**ON BRIEF:** Suzanna Kostovski, Detroit, Michigan, for
Appellant. Daniel L. Lemisch, ASSISTANT UNITED

---

STATES ATTORNEY, Detroit, Michigan, for Appellee.
Edward Carter, Pekin, Illinois, pro se.

BOGGS, C. J., delivered the opinion of the court, in which
NORRIS, J., joined. CLAY, J. (pp. 22-30), delivered a
separate dissenting opinion.

———————

## OPINION

———————

BOGGS, Chief Judge. Defendant, Edward Carter, a
Michigan prisoner represented by counsel, appeals an
April 12, 2002 judgment sentencing Defendant to seventy-
seven months in prison for one count of being a felon in
possession of a firearm, in violation of 18 U.S.C. § 922(g).
Before the district court, Defendant pleaded guilty to the
offense but conditioned his plea upon the right to appeal the
district court's denial of his Motion to Suppress and the
district court's denial of his two Motions to Reopen the
Suppression Hearing. For the reasons set forth below, we
affirm the district court's judgment in its entirety.

### BACKGROUND

The testimony of two Detroit police officers, William
Zeolla and Kevin Reed, describes the following account of
Defendant's arrest. On August 4, 2000, at approximately
1:23 a.m., the two testifying officers sat in a marked scout car
near the intersection of Pembroke and Shaftsbury streets in
Detroit, Michigan. Both officers observed a van traveling
eastbound on Pembroke. As the van turned right on
Shaftsbury from Pembroke, it disregarded a stop sign. The
police activated their vehicle's overhead lights and attempted
to stop the van.

The van took approximately thirty seconds to stop. Neither officer could see a license plate on the van as it pulled over.[1] While the van was pulling over, the officers observed occupants of the van making movements. Officer Reed approached the front passenger and observed the shoulder strap of a bullet-proof vest protruding from the passenger's shirt. In fact, the front passenger wore a vest identical to those worn by Detroit police officers, so that the strap was immediately apparent to Reed as the strap of a bullet-proof vest. When Reed asked him if he was wearing body armor, the passenger stated that he was.

Officer Reed ordered the front passenger, later identified as Marcellas Dunbar, to step out of the car. As Dunbar exited the passenger side of the van, Reed saw him make a tossing motion. Reed heard a distinct "thud" from the front passenger area after Dunbar made the tossing motion. Officer Zeolla observed a handgun drop to the floor of the vehicle as the tossing motion was made. According to Officer Reed's account, Dunbar was then "combative," using vulgar language and trying to pull away from the officer. Officer Reed handcuffed Dunbar.

Officer Zeolla then ordered the driver, later identified as Rob McGruder,[2] out of the van. Upon seeing a gun drop to the floor as the front passenger exited the car, Officer Zeolla handcuffed McGruder.

Officer Zeolla then removed Defendant, Edward Carter, from the van, where he had been seated as the rear passenger. Defendant wore a bullet-proof jacket. As Defendant exited the vehicle, Officer Zeolla believed that he saw that Defendant had been sitting on a handgun. When he pleaded

---

[1] It was later discovered that the van had a temporary tag, though it was not certain whether the tag was expired.

[2] This individual is also referred to as Robert Elsberry, at times.

guilty, Defendant admitted to possessing a gun in the car, though he stated that he was not sitting on it but rather it was located near him in the vehicle.

Among the other items that the police located in the vehicle was a police scanner on the rear floor in the area where Defendant sat. The scanner was on, tuned into the Detroit Police Department frequency. In addition to the two handguns and the scanner, the officers found gloves, two masks, and two walkie-talkies.

On October 5, 2000, a federal grand jury indicted Defendant on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). Defendant filed a Motion to Suppress in an attempt to exclude the evidence found in the van on grounds that the officers lacked probable cause to stop the vehicle. The district court ordered a suppression hearing, which was held before a magistrate judge on January 30, 2001. Although McGruder and Dunbar testified at the hearing that they specifically remembered the van stopping at the stop sign at Pembroke and Shaftsbury, this was contrary to the testimony of the two officers. On March 12, 2001, in his Report and Recommendation, the magistrate judge found that McGruder and Dunbar were not credible and recommended denying Defendant's Motion to Suppress. Defendant filed timely objections to the magistrate judge's Report and Recommendation, but the district court adopted the report's findings and denied Defendant's Motion to Suppress.

Defendant filed a Motion to Reopen the Suppression Hearing, arguing that he should have the opportunity to ask additional questions of Special Agent Donna Averill of the ATF, who testified for the government at the suppression hearing. Averill had submitted an affidavit in support of the federal complaint based on information she obtained from the Detroit Police Department. According to Defendant's motion, Averill made a statement in her affidavit that conflicted with the testimony of Reed and Zeolla – Averill

had listed the location of the stop sign as being Grandville and Shaftsbury, not the location of the stop sign that was reported by the officers (Shaftsbury and Pembroke). The district court denied Defendant's Motion to Reopen the Suppression Hearing but granted Defendant's Motion to Suppress certain statements that he made, due to violations of his Sixth Amendment rights.

Defendant filed a second Motion to Reopen the Suppression Hearing.[3] Defendant based this motion on the failure of prior counsel to call Detroit Police Sargent Herbert Maxwell as a witness. Maxwell handled the case when Reed and Zeolla returned to the Detroit Police Department. Although he was not present at the scene, Maxwell followed Detroit Police Department procedure and prepared an "Investigator's Report" of the incident. Maxwell indicated that Defendant traveled in a van with no license plate, but his report did not mention that the van ran a stop sign. In their written reports, Reed and Zeolla each indicated that the van failed to stop at the stop sign. On November 8, 2001, the district court denied Defendant's second Motion to Reopen the Suppression Hearing.

On December 3, 2001, Defendant pleaded guilty to the offense, conditioned upon the right to appeal the district court's denial of his Motion to Suppress evidence found in the van and the court's denial of his two Motions to Reopen the Suppression Hearing. The United States Probation Department found that Defendant qualified as a "career offender" under United States Sentencing Guidelines Manual ("U.S.S.G.") § 4B1.1. On April 11, 2001, the district court sentenced Defendant under the Sentencing Guidelines' "career offender" provision to seventy-seven months in prison followed by a three-year term of supervised release.

---

[3]Defendant used various attorneys at different stages and also chose to submit a "*Pro Se* Appellant Supplemental Brief." Defendant's *pro se* brief fails to raise issues not covered by his counsel's brief.

On April 17, 2002, Defendant filed a timely notice of appeal.

## DISCUSSION

Defendant raises three issues for review on appeal: the admissibility of the gun as evidence; the propriety of the district court's denial of his two Motions to Reopen the Suppression Hearing; and the compliance of the sentencing with applicable guidelines. We take these issues in order.

### I

Defendant argues that the gun belonging to him and found in the van by the police was inadmissible as evidence, on the grounds that there was not probable cause to stop the vehicle.

Officers may stop a vehicle where there is probable cause to believe that a traffic infraction was committed. *Whren v. United States*, 517 U.S. 806, 810 (1996) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.") (citations omitted).

A district court's probable cause determination potentially involves two steps, each subject to a different standard of review. The first step is a determination of historical facts. *Ornelas v. United States*, 517 U.S. 690, 696-97 (1996). This court reviews a district court's factual findings relating to probable cause for clear error, viewing the evidence in the light most favorable to the government. *United States v. Buchanan*, 72 F.3d 1217, 1223 (6th Cir. 1995). The second step in the analysis is the application of the law to the facts, a mixed question of law and fact that this Court reviews *de novo*. *Ornelas*, 517 U.S. at 696-97.

The district court referred the suppression issue to a magistrate judge for a hearing. The magistrate judge's Report and Recommendation recounts the testimony of Officers

Zeolla and Reed, stating that the van did not come to a complete stop at the stop sign at Pembroke and Shaftsbury. The report describes the testimony of McGruder and Dunbar, the two other occupants of the vehicle besides Defendant, stating that the vehicle did come to a full stop at the intersection. The document observes that the government attempted to impeach McGruder's testimony by calling Special Agent Averill to testify as to an allegedly prior inconsistent statement made to investigators. McGruder, when interviewed on January 5, 2001, had allegedly stated that he did not see a stop sign. Defendant had countered this allegation with testimony from McGruder and from a federal investigator, indicating that McGruder's statement made about not seeing a stop sign referred to the intersection of Grandville and Pembroke (where the officers were located), not to the intersection at Pembroke and Shaftsbury.

The magistrate judge, conceding that "[t]his case is difficult" because the testimony of the officers and that of McGruder were both "definite and clear in their differing versions" of what had happened, ruled in favor of the government on the basis of credibility determinations. The magistrate judge reasoned:

> Mr. McGruder, the driver, who was not familiar with the area . . . testified that they saw the police pull up behind them as they passed Grandville. With all of the burglar paraphernalia in the van, it is likely that there was a flurry of activity to hide the items and this would be consistent with the officers' testimony that they saw movement of the occupants in the vehicle before it actually stopped. Mr. McGruder's attention may have been distracted as he came to the unfamiliar Pembroke/Shaftsbury intersection which, while it had a stop sign, was still somewhat of a rounded turn . . . . It is quite possible that the van did not come to a complete stop at the corner.

The magistrate judge also found it "suspicious" that, in his interview with Averill, McGruder had become "so confused or equivocal" about having stopped at the intersection of Grandville and Pembroke; the magistrate judge stated: "It is quite possible that McGruder never actually thought about stopping at Grandville and was going to claim that there was no visible stop sign at Shaftsbury." Finally, the magistrate judge opined:

> It is . . . very hard for the Court to believe that the two sworn officers would perjure themselves, and put their reputations and careers in jeopardy, for what must be seen as a relatively minor case with no victim. . . . Mr. McGruder, on the other hand, has a felony conviction for fleeing and eluding, and while positively recalling that he fully stopped at the corner, interestingly denied seeing any guns, masks, gloves, radios or scanner in the van . . .; the testimony of the front seat passenger, Mr. Dunbar, regarding the circumstances of the stop was so confusing and contradictory as to be essentially worthless . . . .

In an order adopting the magistrate judge's credibility determinations, the district court denied Defendant's Motion to Suppress.

The district court thus found that, as a matter of historical fact, the van had not stopped at the intersection of Pembroke and Shaftsbury. None of the evidence relied upon by the magistrate judge – and then the district court – was inadmissible, with the possible exception of McGruder's felony conviction for fleeing and eluding, which was not admissible unless the conviction was "punishable by . . . imprisonment in excess of one year under the law under which the witness was convicted," and the conviction was not more than ten years old. Fed. R. Evid. 609(a)(1) (also making the evidence subject to Rule 403), 609(b); *see also* Rule

404(a)(3).**[4]**   Assuming*, arguendo*, that the evidence of McGruder's prior convictions was inadmissible, then this was the only error in the ruling – as such, there was still ample admissible evidence to support the finding.

Viewed in the light most favorable to the government, the officers were credible, in stating that the van did not stop at the stop sign, and the statements of McGruder and Dunbar were not credible. The magistrate judge raised numerous reasons for his credibility findings, only one of which – the reference to prior convictions of McGruder – might be clearly erroneous. There are sufficient reasons, aside from the prior convictions, for the credibility determinations. The district court's determination of historical fact, per the Report and Recommendation of the magistrate judge, withstands review for clear error.

As to the second stage of the probable cause analysis, upon *de novo* review there is no doubt the district court properly applied the law to the facts – *i.e.*, if the van did not stop at the stop sign, then it is indisputable that there was probable cause to believe that the van had committed a traffic infraction.

## II

Defendant contests the district court's denial of its two Motions to Reopen the Suppression Hearing. Defendant's first motion was to reopen the hearing to allow him to elicit further testimony from Special Agent Donna Averill. Averill had testified at the suppression hearing. On cross-examination, however, Defendant had not asked Averill about the statement in her affidavit that listed the location of the stop sign in question at Grandville and Shaftsbury, which conflicted with the location reported by the officers

---

**[4]**Fleeing or eluding would not fall under the ambit of Rule 609(a)(2), which makes admissible evidence of a conviction "if it involved dishonesty or false statement, regardless of the punishment." *See also* 609(b) (the conviction must not have been more than ten years old).

(Shaftsbury and Pembroke). Defendant's second motion was to reopen the suppression hearing to allow Detroit Police Sargent Herbert Maxwell to testify. Defendant had failed to call Maxwell as a witness at the hearing, even though Maxwell "Investigator's Report" indicated that Defendant traveled in a van with no license plate, but did not mention that the van ran a stop sign.

We review a trial court's ruling on a motion to reopen a suppression hearing for an abuse of discretion. *United States v. Lawrence*, 308 F.3d 623, 627 (6th Cir. 2002); *United States v. Alexander*, 948 F.2d 1002, 1003 (6th Cir. 1991).

A ruling on whether to reopen a suppression hearing is governed by principles of jurisprudence that relate to reopening proceedings, generally. In reversing a district court's decision to reopen a suppression hearing, the Third Circuit stated, "'courts should be extremely reluctant to grant reopenings.'" *United States v. Kithcart*, 218 F.3d 213, 219-20 (3d Cir. 2000) (citing *United States v. Blankenship*, 775 F.2d 735, 740 (6th Cir. 1985)). The case quoted, *Blankenship*, involved a motion to reopen a case-in-chief. The principles that governed the ruling on the motion to reopen a case-in-chief in *Blankenship* were cited as applicable to a motion to reopen a suppression hearing in *Kithcart*. The Third Circuit stated:

When faced with a motion to reopen, the district court's primary focus should be on whether the party opposing reopening would be prejudiced if reopening is permitted. [*Blankenship,* 775 F.2d at 740]; *see also* 28 Charles A. Wright & Victor J. Gold, Federal Practice And Procedure § 6164 (1993). However, "the trial judge must consider a number of factors." *Blankenship*, 775 F.2d at 741 (emphasis added). Furthermore, "[t]he party moving to reopen should provide a reasonable explanation for failure to present the evidence [initially]." *Id*. In order to properly exercise its discretion the district court must evaluate that explanation and determine if it is both

reasonable, and adequate to explain why the [moving party] initially failed to introduce evidence that may have been essential to meeting its burden of proof.

218 F.3d at 220.

Defendant presents ineffective assistance of counsel as the reason for the failure to introduce the testimony from Averill as to the affidavit and for the failure to call Maxwell as a witness. Defendant no longer retains the counsel that he had at the suppression hearing. Defendant claims to have alerted the prior counsel to the location of the stop sign listed in the Averill affidavit in time for the prior counsel to have raised the issue. Defendant claims that the Averill affidavit's listing of a different location for the missed stop sign was important because the magistrate judge's finding of probable cause relied on assessments of the credibility of the officers.

Nevertheless, Defendant failed to raise the issue of ineffective assistance of counsel before the district court. In the first motion to reopen the hearing – requesting that Defendant be allowed to elicit testimony as to the Averill affidavit – Defendant did not raise the issue of ineffective counsel. In the second motion – requesting that Defendant be allowed to call Maxwell as a witness – Defendant refers in passing to the change of counsel, but makes no argument as to ineffective counsel. Nor was any other reason given in either motion as to why the requested evidence had not been presented at the suppression hearing. As stated in *Kithcart*, "'[t]he party moving to reopen should provide a reasonable explanation for failure to present the evidence [initially].'" 218 F.3d at 220 (quoting *Blankenship*, 775 F.2d at 741). Defendant presented no explanation before the district court about why he failed to present the evidence initially. Thus, the district court did not abuse its discretion by denying the motions to reopen the suppression hearing.

## III

Defendant appeals his sentencing. Defendant received a sentence of seventy-seven months in prison followed by a three-year term of supervised release, having been sentenced as a "career offender" under U.S.S.G. § 4B1.1, which states:

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). The dispute in the present case arises over the third provision, stating that for a defendant to be a "career offender," the defendant must have a minimum "two prior felony convictions" of a crime of violence or a controlled substance offense. The applicable term is defined as follows:

The term "two prior felony convictions" means (1) the defendant committed the instant offense of conviction subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense (i.e., two felony convictions of a crime of violence, two felony convictions of a controlled substance offense, or one felony conviction of a crime of violence and one felony conviction of a controlled substance offense), and (2) the sentences for at least two of the aforementioned felony convictions are counted separately under the provisions of § 4A1.1(a), (b), or (c).

*Id*. § 4B1.2(c). For convictions of a defendant after he or she reached the age of eighteen, the guidelines count "any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being

incarcerated during any part of [the] fifteen-year period . . . within fifteen years of the defendant's commencement of the instant offense." *Id*. § 4A1.2(e)(1); *see also id.* § 4A1.2(e)(4) (imposing different rules for sentences imposed prior to the defendant reaching the age of eighteen).

Whether sentences are counted as pertaining to separate convictions under U.S.S.G. § 4B1.2(c)(2) depends on whether they are "related" or "unrelated." *Id*. § 4A1.2(a)(2) ("Prior sentences imposed in unrelated cases are to be counted separately. Prior sentences imposed in related cases are to be treated as one sentence for purposes of § 4A1.1(a), (b), and (c) . . . .").

Defendant contests his sentence on two grounds. Before examining each of these arguments, we should set forth the pertinent facts. As a nineteen-year-old, Defendant was convicted in two legal proceedings, arising from two separate incidents. On March 2, 1981, Defendant was arrested for armed robbery and felony firearm, after having used a handgun in robbing an individual of a purse, money, jewelry, and a jacket on January 18, 1981. On March 4, 1981, Defendant was arrested, again for armed robbery and felony firearm, based on an incident where Defendant and another individual, while armed with handguns, robbed two other individuals of various items (including a car, a briefcase, checks, a purse, money, credit cards, and identification cards) on January 7, 1981. On June 7, 1984, Defendant was released on parole. On September 12, 1986, Defendant was arrested by Detroit police and held in custody for attempted possession with intent to deliver. On October 17, 1986, Defendant was returned to custody on account of the parole violation and two new convictions for unlawfully driving away an automobile and for possession with intent to deliver. On November 14, 1989, Defendant was again released on parole. On March 8, 1990, Defendant was returned to custody, based on a technical violation of parole. On April 13, 1990, Defendant was again released on parole, and was subsequently discharged on October 12, 1990.

Based on these facts, Defendant raised two objections to his sentence. First, he challenges whether either of his two felony sentences from 1981 extended into the fifteen years prior to his commencement of the present offense. Second, he contends that the 1981 convictions were consolidated in sentencing and thus "related." Defendant raised these two objections in the sentencing proceeding before the district court. The Presentence Investigation Report ("PSR") rejected both objections through brief written responses that were submitted in the Addendum to the PSR.

At the sentencing hearing, the district court dismissed all of Defendant's objections without explanation. ("I agree with the conclusions reached by the Probation Department and I believe that none of the objections raised are with merit."). Defendant made at least eight objections to the PSR, including numerous objections that have not been renewed on appeal. Yet the district judge adopted the PSR's arguments against each and every objection, without offering any explanation.

The district court's failure to offer explanations was a clear violation of Fed. R. Crim. P. 32(i)(3)(B). This Rule states:

> At sentencing, the court . . . must – for any disputed portion of the presentence report or other controverted matter – rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing.

This court has made it clear on several occasions that the district courts must be in "literal compliance" with the requirements of Rule 32. *See United States v. Corrado*, 227 F.3d 528, 540-41 (6th Cir. 2000) (explaining that "literal compliance" requires more than "summarily adopt[ing] the findings of the presentence report or simply declar[ing] that the enhancement in question was supported by a preponderance of the evidence"); *see also United States v. Osborne*, 291 F.3d 908, 912 (6th Cir. 2002) (vacating

sentence where district court did "nothing more than state summarily that [it] was accepting the sentencing range as set forth in the presentence report").

Our finding that the district court violated Rule 32(i)(3)(B) is not, however, the end of the analysis. This court must also determine whether the district court's error was harmless. *See United States v. Darwich*, 337 F.3d 645, 666 (6th Cir. 2003) (applying harmless error analysis to Rule 32(i)(3)(B)); *United States v. Parrott*, 148 F.3d 629, 633-34 (6th Cir. 1998) (holding that even though the "[d]istrict [c]ourt did not fully comply with Rule 32(c)(1) when it simply adopted the [presentence] report," the "error in this regard was harmless").[5] *See also* Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.").

For reasons explained below, both of Carter's objections clearly fail, and so the district court's failure to provide specific determinations was harmless. Accordingly, remanding the sentence would only be a waste of judicial resources. Our conclusion, however, should in no way be seen as undermining the requirements of Rule 32. District courts are warned that they must continue to comply literally with Rule 32. We stress that, given the specific circumstances in this case, the error was harmless because Carter's arguments cannot possibly afford him relief.

We now turn to each of Carter's two objections.

## A. Whether Defendant was Incarcerated for a Felony During the Fifteen Years Prior to the Present Offense

Pursuant to U.S.S.G. § 4A1.2(e)(1), Defendant contests having been incarcerated during the fifteen years prior to the present offense. The present offense was committed on

---

[5] Rule 32(c)(1) is an older version of the current Rule 32(i)(3)(B).

August 4, 2000. Defendant had been incarcerated for parole violations from October 17, 1986 to November 14, 1989. All of the original crimes (and the subsequent offenses leading to the revocation of the parole) were felonies. In accordance with U.S.S.G. § 4A1.2(e)(1), then, Defendant was clearly incarcerated for a felony after 1985, and thus during part of the fifteen-year period prior to his commencement of the instant offense.

Defendant argues, based on *Morrissey v. Brewer*, 408 U.S. 471 (1972), that due process entitled him to a parole revocation hearing – which he never received. Under *Morrissey*, due process requires that "the finding of a parole violation be based on verified facts and that the exercise of discretion be informed by an accurate knowledge of the parolee's behavior." *Id*. at 484. However, *Morrissey* was a habeas proceeding. *Id.* at 474. By contrast, the present due process challenge is made at the sentencing phase and is thus impermissible. In *United States v. Bonds*, 48 F.3d 184, 186 (6th Cir. 1995), this court stated:

> The United States argues that this court's decision in *United States v. McGlocklin*, which allowed . . . a collateral attack at sentencing, has been superseded by the decision of the United States Supreme Court in *Custis v. United States*, 511 U.S. 485, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994). In *Custis*, the Supreme Court held that unless there has been a previous ruling that a conviction has been ruled constitutionally invalid, or unless the conviction has been obtained when counsel has not been available or provided, in violation of *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), a collateral attack on the conviction is not allowed at sentencing.

We agree with the United States that *McGlocklin* has been superseded. As this court stated in *United States v. Smith*, 36 F.3d 490, 492 (6th Cir. 1994):

*Custis* has now been decided and it holds that neither § 924(e) nor the Constitution permit a defendant to "collaterally attack the validity of previous state convictions that are used to enhance his sentence under the ACCA . . . with the sole exception of convictions obtained in violation of the right to counsel."

(citation omitted). In the present case, defendant is alleging that his *Boykin* rights were violated, not his *Gideon* right to counsel. Therefore, according to *Custis*, defendant cannot collaterally attack the validity of his previous state conviction for robbery on the ground that the guilty plea was unconstitutional, and the 1976 state conviction for robbery was therefore properly used to enhance his sentence.

In *Bonds*, the due process challenge at sentencing was to a conviction. That the challenge is to a parole revocation in the present case does nothing to distinguish it from *Bonds*. Defendant's argument that he was denied due process in not receiving a parole revocation hearing may not be used as a basis for challenging his sentencing. As a matter of law, Defendant's due process challenge could not possibly serve as a basis for altering the sentence imposed by the district court.

## B. Whether the Past Offenses were "Related"

Defendant contests the determination that he had "two prior felony convictions," which made him a career offender under U.S.S.G. § 4B1.1(a). Sentences are counted as pertaining to separate convictions, under U.S.S.G. § 4B1.2(c)(2), if they are "unrelated." *Id*. § 4A1.2(a)(2) ("Prior sentences imposed in unrelated cases are to be counted separately. Prior sentences imposed in related cases are to be treated as one sentence for purposes of § 4A1.1(a), (b), and (c) . . . ."). "Related" sentences are defined as follows:

Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). Otherwise, prior sentences are considered related if they resulted from offenses that (A) occurred on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing . . . .

*Id*. § 4A1.2, Application Note 3. As stated earlier, the only possible objection (which Carter did raise) was that these offenses were consolidated for sentencing.

In the sentencing proceeding, the PSR rejected this objection, based on three alternative arguments, each of which would independently defeat Defendant's claim: the PSR argued that (1) there was an intervening arrest, making the offenses unrelated under U.S.S.G. § 4A1.2, Application Note 3; (2) there was no formal consolidation order and thus the offenses did not meet the criterion for consolidation in sentencing (and the offenses did not otherwise meet the criteria for relatedness under U.S.S.G. § 4A1.2, Application Note 3); and (3) the issue is moot.[6] The district judge

---

[6] In full, the Probation Department's response to Defendant's objection to the treatment of the two prior offenses as unrelated stated:

Even though Defendant was sentenced on the same day for both the armed robbery offenses, the Probation Department does not have any proof to verify that there was any formal order of consolidation filed with the court. The offenses explained in Paragraphs 29 and 32 were separated by an intervening arrest, and they did not occur on the same occasion and were not part of a single common scheme or plan. Therefore they were not related. Furthermore, even if the two armed robbery offenses are considered consolidated for guidelines purposes, the base offense level of 24 is still applicable for the armed robbery offense(s) and the Possession With Intent to Deliver. Therefore, the report will remain as written, and this matter will be left to the Court to decide.

adopted the PSR's conclusion without explanation. ("I agree with the conclusions reached by the Probation Department and I believe that none of the objections raised are with merit"). Any one of the three grounds raised in the PSR would have been dispositive. Because the district court denied Defendant's objections without explanation, we cannot know whether the district court relied on only one of the PSR's arguments (and if so, which one), or whether the district court relied on two (and, again, if so, which two), or whether the district court accepted all three.

Indeed, because there was no intervening arrest, it is possible that the district court made a mistake if it relied solely on the first argument in dismissing the objection. However, even assuming the court did rely on this argument, its error was harmless given that Carter's argument clearly fails for other reasons. *United States v. Allen*, 106 F.3d 695, 700 n.4 (6th Cir. 1997) ("[W]e may affirm on any grounds supported by the record, even though different from the grounds relied on by the district court.").

First, this court's recent decision in *United States v. Horn*, 355 F.3d 610 (6th Cir. 2004), makes it clear that Carter's prior convictions could not possibly have been consolidated for purposes of § 4A1.2. *Horn* states that we "must review deferentially, that is, for clear error, the entirety of the district court's determination that Horn's prior robbery convictions were not related." *Id*. at 613. Even assuming that the district court clearly erred, *Horn* goes on to explain that "cases are not consolidated when offenses proceed to sentencing under separate docket numbers, cases are not factually related, and there was no order of consolidation." *Id*. at 614. Carter's two convictions proceeded under different docket numbers, resulted from unrelated crimes separated by eleven days, and lacked an order of consolidation.

In *Horn*, we declined to find that the convictions were consolidated even though the defendant:

was arrested and charged with the robberies at the same time; . . . made an initial appearance as to both offenses at the same time; the cases were set for trial on the same date; the same counsel represented defendant as to both offenses; a guilty plea was entered for each offense on the same day; and defendant was sentenced for both offenses on the same day with sentences to run concurrently.

*Id*. at 614. *Horn* presented a more compelling case for consolidation than Carter does because the defendant in *Horn* "was arrested and charged with the robberies at the same time." *Id*. at 614. Carter was not. He was arrested on March 2, 1981 for one of his armed robberies. Two days later, and presumably while in custody, he was arrested for the second robbery. There is simply no legal basis to support Carter's claim of consolidation.

But even assuming, contrary to fact, that the 1981 convictions were consolidated (and thus counted as one, rather than two, prior convictions), the issue is moot because Carter's 1986 conviction (attempted possession with intent to deliver), when combined with the 1981 conviction, would be sufficient to justify the sentencing enhancement. In the objections to the PSR, Carter's attorney explicitly conceded that the 1986 conviction would qualify as a "prior felony conviction" involving a controlled substance. She wrote:

[N]either of the 1981 convictions for armed robbery qualify Defendant for an enhancement. The only conviction that qualifies is described in paragraph 36 [i.e., the 1986 possession with intent conviction], which places Defendant at the base level of 20. The offense referenced in paragraph 41 [simple possession] does not qualify as a prior controlled substance conviction since it was simple possession and did not involve the intent to manufacture, import, export, distribute, or dispense.

The clear statement is that the 1986 conviction (in paragraph 36) *did* qualify as a prior controlled substance

conviction. Therefore, even if the 1981 convictions were related, that single prior felony conviction must be combined with the 1986 conviction. Combining these two convictions makes it clear that Carter had two prior felony convictions within the relevant time period, which makes the consolidation issue moot.

Carter's arguments cannot possibly succeed. The district court's error was thus harmless, and remand would only be a waste of judicial resources.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court as to Carter's conviction and sentencing.

## DISSENT

CLAY, Circuit Judge, dissenting. On appeal, Defendant renews his objection, made originally at sentencing, to the Probation Department's assessment that Defendant had two prior unrelated felony convictions. Pursuant to Federal Rule of Criminal Procedure 32, the district court was required to rule on this matter, but the district court failed to comply with this rule. As a result, the case is required to be remanded for a ruling by the district court on Defendant's objection.

At sentencing, Defendant objected to the Probation Department's finding that there were two prior unrelated felony convictions. Defendant argued that two prior felony convictions for offenses committed in January 1981 were consolidated for sentencing and thus were related under U.S.S.G. § 4A1.2, Application Note 3(C). The district court denied the objection, along with seven other objections,[1] without ever addressing any of the objections individually. The district court's entire consideration of all eight objections consisted of a single statement summarily adopting the presentence report: ". . . I agree with the conclusions reached by the Probation Department and I believe that none of the objections raised are with merit . . . ." (J.A. at 316.)

The district court's failure to address Defendant's objections violated Federal Rule of Criminal Procedure 32, which states,

At sentencing, the court . . . must–for any disputed portion of the presentence report or other controverted

---

[1] None of the other objections are renewed on appeal. Thus, the case should be remanded but only for a ruling on the issue presented before this Court–the question of whether there were two prior related felony convictions.

matter–rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing.

Fed. R. Crim. P. 32(i)(3)(B). In requiring the district court to "rule" on all disputed matters, Rule 32 does not define what is required by the term "rule"–Rule 32 never specifies precisely what level of depth or explanation is required from the district court. Thus, it is conceivable that in certain cases there might be uncertainty as to whether a district court's terse explanation for denying an objection would satisfy Rule 32.

However, such theoretical questions regarding the level of depth needed to constitute a ruling are unnecessary for the purposes of deciding the present case. This Court has held that a district court's blanket reliance on the presentence report–as occurred in the present case–does not constitute a "ruling." *United States v. Darwich*, 337 F.3d 645, 667 (6th Cir. 2003) ("exclusive reliance on the PSR when a matter is in dispute cannot be considered a ruling."). *See also United States v. Tarwater*, 308 F.3d 494, 518 (6th Cir. 2002) ("Because the purpose of the rule is to ensure that sentencing is based on reliable facts found by the court itself after deliberation, a court may not merely summarily adopt the factual findings in the presentence report or simply declare that the facts are supported by a preponderance of the evidence. *United States v. Corrado*, 227 F.3d 528, 540 (6th Cir. 2000); *United States v. Tackett*, 113 F.3d 603, 613 (6th Cir. 1997).") Indisputably, the district court violated Rule 32, in the present case.

Established precedent in this Circuit makes clear that a remand is required where the district court has violated Rule 32 by relying solely on the presentence report. In *United States v. Corrado*, 227 F.3d 528 (6th Cir. 2000), and predecessor cases cited in *Corrado,* the district court had

relied solely on the presentence report; this Court remanded, requiring "literal compliance" with Rule 32:

The Federal Rules of Criminal Procedure provide that, for each sentencing matter controverted,

the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing. A written record of these findings and determinations must be appended to any copy of the presentence report made available to the Bureau of Prisons.

Fed. R. Crim. P. 32(c)(1).[2] This court has required "literal compliance" with this provision, stating that it "helps to ensure that defendants are sentenced on the basis of accurate information and provides a clear record for appellate courts, prison officials, and administrative agencies who may later be involved in the case." *United States v. Tackett*, 113 F.3d 603, 613-14 (6th Cir. 1997).

In the present case, the district court did not comply with the requirements of Rule 32(c)(1). Both Corrado and Tocco objected to several findings in the presentence report, including the leadership role of the defendants, the finding of a conspiracy to murder Bowman, and the determination that Corrado was armed at the time that the defendants extorted money from Sophiea. The district court did not set out findings as to any of these issues at

---

[2]This provision from the former Rule 32(c)(1) is now found in Rule 32(i)(3). *See, e.g.*, *United States v. Montgomery*, 2003 U.S. App. LEXIS 21950, at *2, *2 n.1 (10th Cir. Oct. 27, 2003) ("Montgomery appeals, arguing that the trial judge should have disqualified himself, erred by departing upward, and erred by failing to comply with Federal Rule of Criminal Procedure 32(i)(3). . . . Formerly this provision was contained in Fed. R. Crim. P. 32(c).").

sentencing. Instead, it either summarily adopted the findings of the presentence report or simply declared that the enhancement in question was supported by a preponderance of the evidence. . . .

In *Tackett*, the defendants similarly objected to their sentences on the ground that the district court made no findings as to contested issues of fact. After listening to counsels' arguments regarding an enhancement for obstruction of justice, the district judge "stated simply that 'the court adopts the factual findings and guideline applications in the presentence report.'" *Tackett*, 113 F.3d at 614 (second alteration in original). This court concluded that "this is a far cry from the making of a finding for each matter controverted, as the plain language of Rule 32 requires," and remanded for resentencing. *Id.*; *see also United States v. Monus*, 128 F.3d 376, 396 (6th Cir. 1997) ("The law in this circuit clearly prohibits a court faced with a dispute over sentencing factors from adopting the factual findings of the presentence report without making factual determinations of its own."); *United States v. Mandell*, 905 F.2d 970, 974 (6th Cir. 1990) (holding that a district court's sentence that simply adopted the findings of the presentence report as to controverted factual matters violated Rule 32).

We therefore conclude that Corrado and Tocco must be resentenced in compliance with the requirements of Rule 32. Without a record of the district court's findings, we are unable to conduct a meaningful review of its determinations as to the base offense level and specific enhancements that it imposed upon the defendants.

*Id.* at 540-41.

In *United States v. Osborne*, 291 F.3d 908, 912 (6th Cir. 2002), Judge Boggs himself authored an opinion reaffirming the "literal compliance" doctrine, stating,

the presentence report held Osborne responsible for distributing approximately 24 grams of methamphetamine. Osborne challenged this finding before the district court . . . . The district judge did nothing more than state summarily that he was accepting the sentencing range as set forth in the presentence report. Because this is clearly insufficient to comply with Rule 32(c)(1), we must vacate James Carl Osborne's sentence and remand his case to the district court for re-sentencing.

*See also id.* at 911 (explaining that "literal compliance" is required) (citing *Corrado* and *Tackett*). Inexplicably, in his majority opinion in the present case, Judge Boggs has now departed from the binding precedent that was established by his own *Osborne* opinion and the *Corrado* and *Tackett* cases that he cited in *Osborne*.

Of course, Judge Boggs' opinion does not expressly admit that it violates the "literal compliance" doctrine; rather, the opinion attempts to rely upon "harmless" error analysis. According to the majority opinion, the Rule 32 violation was "harmless" because the two 1981 convictions could not possibly have been consolidated for sentencing, and because the 1986 conviction would be a second conviction, even if the two 1981 convictions were consolidated. Yet the majority's argument is not relevant to the applicable legal standard. The "harmless" error exception to the "literal compliance" doctrine applies only where the controverted matter is *immaterial*–i.e., where the sentence would have been identical, even if the controverted matter had been decided to the contrary. As stated in *United States v. Darwich*, 337 F.3d 645, 666 (6th Cir. 2003), regarding the replacement of Rule 32(c) with Rule 32(i)(3)(B):

This new rule attempts to eliminate confusion over whether courts were required to make rulings on every objection to the PSR or only those that have the potential to affect the sentence. Fed. R. Crim. P. 32(i)(3) advisory

committee's note (2002). The new rule makes clear that controverted matters at sentencing only require a ruling if the disputed matter will affect the eventual sentence.

In the present case, there is no question that the disputed issue (of whether the prior convictions were related) would affect the sentence. Two prior unrelated felony convictions were needed to establish the offense level under which Defendant was sentenced. *See* U.S.S.G. § 2K2.1(a)(2) (the offense level is "24, if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense."); *id*. § 4A1.2(a)(2) ("Prior sentences imposed in unrelated cases are to be counted separately. Prior sentences imposed in related cases are to be treated as one sentence for purposes of § 4A1.1(a), (b), and (c). . . ."); *id*. § 4B1.2(c)(2) ("The term 'two prior felony convictions' means . . . the sentences for at least two of the aforementioned felony convictions are counted separately under the provisions of § 4A1.1(a), (b), or (c)."); *United States v. Charles*, 209 F.3d 1088, 1090 (8th Cir. 2000) (calculating offense level, under § 2K2.1(a), by applying the definition of a single felony offense from § 4B1.2(c)). The controverted matter was not immaterial; thus, the district court was required to rule on the matter.

The district court's failure to rule on the objection makes the present case indistinguishable from *Darwich*, in which the Court recited the "harmless" error standard, 337 F.3d at 666, but concluded that the error was not "harmless" and remanded, for a ruling on the disputed matter. *Id.* at 667. In *Darwich*, the district court had failed to specify whether an enhancement under U.S.S.G. § 3B1.1(a) was for a leadership role in criminal activity or, alternatively, was for otherwise extensive involvement in criminal activity. 337 F.3d at 666 ("U.S.S.G. § 3B1.1(a) provides that a defendant's sentence can be enhanced by four levels 'if the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive.'"); *id.* at 667

("the district court did not issue a ruling on the disputed matter of whether Darwich's illegal drug activity was extensive or involved more than five individuals"). The district court's failure to specify which of the two explanations had justified the enhancement meant that the district court's decision was ambiguous and unclear.

In the present case, the district court's decision was similarly ambiguous and unclear. Defendant disputed the finding that there had been two prior unrelated convictions; Defendant argued that two prior (state court) felony convictions for offenses committed on January 7, 1981 and January 18, 1981 were consolidated for sentencing and were thus related, under U.S.S.G. § 4A1.2, Application Note 3(C). The Probation Department presented three independent, alternative grounds denying the objection, arguing that (1) the January 1981 offenses were unrelated (under U.S.S.G. § 4A1.2, Application Note 3), because there was an intervening arrest; (2) there was no formal consolidation order and thus the two January 1981 offenses did not meet the criterion for consolidation in sentencing (and the offenses did not otherwise meet the criteria for relatedness under U.S.S.G. § 4A1.2, Application Note 3); and (3) the issue was moot, because a base offense level of 24 would have applied, even if the prior offenses had been related. In denying Defendant's objection, without explanation, the district court never stated which of the three independent arguments it was relying upon; compliance with Rule 32 avoids the type of confusion that has resulted in the present case, where it is impossible to ascertain which argument(s) the district court relied upon. The district court's failure to specify which of the alternative grounds it was relying upon was identical to the situation in *Darwich*, where the error was not "harmless."

To further illustrate how the majority has misconstrued "harmless" error analysis, the present case can be contrasted with a case in which a Rule 32 infraction was properly deemed "harmless." In *United States v. Parrott*, 148 F.3d 629 (6th Cir. 1998), the defendant "contended generally that there

was no evidence to support the § 2T1.3(b)(1) enhancement," because there was no evidence that an offense occurred, or was charged, as the enhancement required. *Id.* at 633. The district court disposed of this matter by making a clear legal conclusion that was supported with a factual finding: "[t]he court asserted that the government had proved by a preponderance of the evidence that Parrott's conduct violated Tennessee's statute for theft of property." *Id.* However, this Court determined that there was a violation of Rule 32, because the district court "did not make independent findings with respect to the elements of the offense." *Id.* Yet this Court made clear that the district court had not committed a blanket, wholesale violation of Rule 32 but, rather, only a partial infraction. *Id.* ("the District Court did not *fully* comply with Rule 32(c)(1)") (emphasis added). The partial error was immaterial, because the defendant had admitted, at a plea hearing, to having a prior offense that would support the enhancement. *Id.* at 634 ("Parrott's plea of guilty to filing a false tax return for the year 1990 . . . constitutes an admission . . . . In sum, although the District Court technically erred by adopting the challenged paragraph of the presentence report in support of the § 2T1.3(b)(1) enhancement, the error was harmless in light of Parrott's own admissions at the plea hearing.").

In *Parrott*, this Court simply examined the factual record, to determine if the district court's clear legal conclusion was supported. There was no suggestion that the appeals court would have been free to substitute its own legal conclusion if the district court had completely disregarded Rule 32, by not issuing any legal conclusion whatsoever, on a disputed matter. *Parrott* in no way contradicted *Darwich*'s holding that where the district court summarily adopts the presentence report's conclusion on a disputed matter, a remand is required under Rule 32. Thus, it is beyond question that the law of this Circuit, as established by the cases set forth above, requires a remand in the present case, because the district court summarily adopted the presentence report on the disputed issue of prior related offenses.

The majority has attempted to rationalize its violation of the law of this Circuit as an attempt to avoid "a waste of judicial resources." Even if the majority's decision truly were the most efficient course of action, nonetheless, it goes without saying that this Court is not free to violate binding case law in the name of efficiency. This panel is not free to abandon the "literal compliance" doctrine that this Court has previously adopted. *Turker v. Ohio Dep't of Rehab. & Corrs.*, 157 F.3d 453, 457 (6th Cir. 1998) ("a panel of this Court cannot overrule the decision of another panel.") (citations and internal quotation marks omitted).

In addition, even if the majority were not violating binding law on this issue, the efficiency argument would be unpersuasive. In *Buford*, the Supreme Court explained that a district court's experience and expertise in sentencing issues place the district court in the best position to make the determination of whether there was consolidation for sentencing. 532 U.S. at 64 ("the district court is in a better position than the appellate court to decide whether a particular set of individual circumstances demonstrates 'functional consolidation.' That is so because a district judge sees many more 'consolidations' than does an appellate judge."); *id.* at 66 (citing "the comparatively greater expertise of the District Court" in matters of consolidation for sentencing). Undoubtedly, the district court's greater experience and expertise in sentencing allow the district court to rule on issues such as consolidation with far greater efficiency than this Court can in adjudicating such issues. The true "waste of judicial resources" occurs when this Court attempts to speculate in areas that lie squarely within the district court's expertise, instead of simply remanding for an initial ruling by the district court. The most efficient course of action would have been to remand–not coincidentally, that is the outcome that is required by Rule 32 and the "literal compliance" doctrine.

For the aforementioned reasons, I respectfully dissent.