*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0008p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

> *Plaintiff-Appellee/*
> *Cross-Appellant,*

Nos. 05-6263/6514

*v.*

ALMON D. WELLS,

> *Defendant-Appellant/*
> *Cross-Appellee.*

---

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 04-00020—R. Leon Jordan, District Judge.

Argued: November 28, 2006

Decided and Filed: January 9, 2007

Before: DAUGHTREY and GIBBONS, Circuit Judges; EDMUNDS, District Judge.[*]

---

## COUNSEL

**ARGUED:** Kim A. Tollison, FEDERAL DEFENDER SERVICES, Knoxville, Tennessee, for Appellant. Steve H. Cook, ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, for Appellee. **ON BRIEF:** Kim A. Tollison, FEDERAL DEFENDER SERVICES, Knoxville, Tennessee, for Appellant. Steve H. Cook, ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, for Appellee.

---

## OPINION

---

MARTHA CRAIG DAUGHTREY, Circuit Judge**.** The appeal in this case presents a question of first impression in this circuit: whether for purposes of recidivist sentencing under the Armed Career Criminal Act, 18 U.S.C. § 924(e), a prior adjudication of juvenile delinquency is subject to characterization under the "categorical approach" mandated for the review of prior adult convictions by *Taylor v. United States*, 495 U.S. 575 (1990), and *Shepard v. United States*, 544 U.S. 13 (2005). We hold that it is.

---

[*] The Honorable Nancy G. Edmunds, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

The defendant, Almon Wells, pleaded guilty to one charge of being a felon in possession of ammunition and to a second charge of being a felon in possession of a firearm, based on his arrest in two separate shooting incidents. After the district court sentenced him to consecutive prison terms of 120 months and 80 months, he appealed, contending that the 200-month sentence is unreasonable.[1] The United States also filed an appeal and now contends that the district judge erred both in designating the date on which Wells's sentence was to begin and in failing to find the defendant to be an armed career criminal for sentencing purposes.

We conclude that the defendant's sentence was reasonable and that the district judge did not err in concluding that the defendant did not have the three necessary predicate convictions to justify sentencing under the Armed Career Criminal Act. We therefore sustain the 200-month sentence. However, we also conclude that the district court erred in designating a commencement date for Wells's sentence and find it necessary to order a remand for the limited purpose of deleting from the sentencing order the statement "This sentence is effective as of August 11, 2005."

### FACTUAL AND PROCEDURAL BACKGROUND

At Wells's guilty plea hearing, the government established on the record that the defendant had pulled a gun during a fight at a Knoxville club on April 27, 2003, and that he had fired numerous shots from a semiautomatic pistol at a Knoxville police officer on January 15, 2004, when that officer approached the defendant in a city housing project. The prosecutor also established that the weapons and ammunition involved in the two incidents were manufactured outside Tennessee and that Wells had, in 1999, been convicted of prior felony offenses. Although the defense would "not agree with those facts," Wells's counsel did state in open court, "We will agree that on the first date we possessed the ammunition. We will admit that on the second date we possessed the weapon. We do admit we were [sic] a convicted felon, and we do admit the interstate nexus."

Based upon those representations, the district court accepted Wells's guilty plea on April 22, 2004. The sentencing hearing was not held, however, until August 11, 2005, well after the issuance of the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). At that time, the district judge recognized that application of the sentencing guidelines to this matter would yield a range of 140-175 months. Nevertheless, in light of "the seriousness of the offense," "to protect the public from further crimes of this defendant," and to "deter others from engaging in this type of life-threatening behavior," the court imposed consecutive sentences of 120 months on count one of the indictment and 80 months on count two. The district judge further denied the government's request to sentence Wells as an armed career criminal and granted the defendant's request to declare the date of sentencing as the commencement date of Wells's federal prison term. Both Wells and the government appealed from portions of the district court's orders.

### DISCUSSION

**The Defendant's Appeal**

After *Booker*, we review sentences to determine whether they are "reasonable," both procedurally and substantively. *See United States v. Collington*, 461 F.3d 805, 807-08 (6th Cir.

---

[1]The defendant also challenged the sentence as a violation of the Ex Post Facto Clause. Because the district court imposed sentence in compliance with the Supreme Court's remedial opinion in *United States v. Booker*, 543 U.S. 220 (2005), Wells argued that he was pleading to offenses that occurred prior to the release of that opinion and would have received a lesser punishment under the pre-*Booker* mandatory sentencing scheme than under post-*Booker* discretionary sentencing. At oral argument, counsel conceded that recent Sixth Circuit case law holds to the contrary. *See*, *e.g.*, *United States v. Barton*, 455 F.3d 649, 652-57 (6th Cir.) *cert. denied*, ___ S.Ct. ___, 2006 WL 3192536 (U.S. Dec. 4, 2006) (No. 06-7576); *United States v. Shepherd*, 453 F.3d 702, 705-06 (6th Cir. 2006). Recognizing that we are bound by those prior decisions, counsel wisely abandoned this issue.

2006). Wells does not argue that the sentencing process was unreasonable in this matter; instead, he contends that a sentence within the guideline range of 140-175 months would have been sufficient to satisfy the statutory sentencing considerations. Specifically, he argues that the 200-month sentence was substantively unreasonable because the district court failed to recognize that the reasons given for departing upward from the guideline range were already taken into consideration by the various guideline factors that had been utilized to calculate the guidelines range. As a result, he argues, the district court gave "an unreasonable amount of weight to" certain sentencing factors. *See United States v. Webb*, 403 F.3d 373, 385 (6th Cir. 2005) (footnote omitted), *cert. denied*, 126 S.Ct. 1110 ( 2006).

> In imposing punishment upon Wells, the district judge stated:

> First, considering the nature and circumstances of the offenses charged, I make the following findings: the defendant has been charged with and has pled guilty to two violations of 18 U.S.C. section 922(g)(1). In this case, the facts and circumstances giving rise to these two charges are some of the most egregious in my experience.

> I find that the government has satisfied its burden of proving by a preponderance of the evidence that the firearm possessed by Mr. Wells was stolen. The firearm was reported stolen by Jimmy Henson in 2002, as evidenced by the police report that's been filed in this case.

> When Officer Willis attempted to stop Mr. Wells after receiving a report of shots fired, Mr. Wells, instead of responding appropriately or instead of running away and discarding the gun, stopped, he assumed a firing position, and using the stolen firearm, fired four or five times at Officer Willis and then engaged in a gun fight with Officer Mattina.

> Based on these facts, I find by a preponderance of the evidence that the stolen firearm was used in connection with another felony, the attempted first degree murder of Officer Willis. What Mr. Wells did was clearly intentional and premeditated. He had an opportunity to flee, he had an opportunity to throw away the firearm; he turned, he pointed the gun at Officer Willis and fired at him.

> The proof also shows that Officer Willis was in uniform, as were the other officers, and that he arrived at the scene in his marked police cruiser. . . .

> Concerning the history and characteristics of Mr. Wells, I find that he has a noteworthy criminal history. He is 25 years old, but he has already earned a criminal history category of six involving much violence. He clearly needs anger management treatment. I'm going to make that a recommendation to the Bureau of Prisons and also a condition of his supervised release.

> I further find that a sentence of 200 months is necessary to reflect the seriousness of the offense and to protect the public from further crimes of this defendant. I would also like to think that this sentence will deter others from engaging in this type of life-threatening behavior . . . .

> This term reflects an enhancement from the upper end of the guideline range. It is felt the sentence will afford adequate deterrence and will provide just punishment.

In reviewing this sentence to determine whether it is substantively reasonable, we start with a "presumption of reasonableness" "[w]hen the district court issues a within-guidelines sentence." *United States v. Davis*, 458 F.3d 491, 496 (6th Cir. 2006), *pet. for cert. filed*, (U.S. Nov. 13, 2006)

(No. 06-7784). Of course, this "does not mean that a sentence outside of the Guidelines range – either higher or lower – is presumptively *un*reasonable. It is not." *United States v. Foreman*, 436 F.3d 638, 644, (6th Cir. 2006). But, "when the district court independently chooses to deviate from the advisory guidelines range (whether above or below it), we apply a form of proportionality review: 'the farther the judge's sentence departs from the guidelines sentence . . . the more compelling the justification based on factors in section 3553(a)' must be." *Davis*, 458 F.3d at 496.

In this case, the district judge imposed an effective sentence that required the defendant to serve less than 17 years for shooting and wounding one individual in an after-hours club, and for repeatedly firing another weapon at point blank range toward a uniformed police officer. Such egregious actions, coupled with the lengthy history of escalating violent behavior by the defendant in his relatively short life,[2] highlight the need for the sentence of incarceration to reflect the seriousness of the offense and to protect the public from further crimes of this defendant. *See* 18 U.S.C. §§ 3553(a)(2)(A) and (C). In light of all relevant circumstances, therefore, the sentencing decision by the district judge involves a relatively minor deviation from the applicable guidelines range and is both justified and reasonable.

**The Government's Appeal**

The government's first issue on cross-appeal concerns the wording of the district court's final judgment. At the conclusion of the sentencing hearing, defense counsel asked the district judge "to give a start date for the sentence . . . because Mr. Wells is here on a writ [of *habeas corpus ad prosequendum*]. If you don't give a start date, he's going to go back to the state. He'll do his state time, and then he'll do whatever time he has to do on this." The district judge acceded to the defendant's request, a ruling that the United States now asserts was in error.

As the prosecution argued before the district court, however, 18 U.S.C. § 3585(a) clearly provides that "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." Because the Bureau of Prisons is usually the governmental entity that can confirm that a defendant has been taken into "custody awaiting transportation to" a federal detention facility, courts have stated that "after a defendant is sentenced, it falls to BOP, not the district judge, to determine when a sentence is deemed to 'commence.'" *United States v. Pineyro*, 112 F.3d 43, 45 (2d Cir. 1997). *Accord Doan v. LaManna*, No. 01-3013, 2001 WL 1299260, at *2 (6th Cir. Aug. 10, 2001) ("[T]he BOP has the authority to determine when a sentence commences.").

In this case, Wells was brought before the district court from state custody, a federal sentence was imposed, and the defendant was then returned to the custody of the State of Tennessee. Consequently, because Wells was not in custody awaiting transport to a federal prison on the date his sentence was imposed, the district judge had no statutory authority to order that the defendant's federal sentence should "commence" on that date. This matter must, therefore, be remanded to the district court so that the language indicating that Wells's federal sentence commenced on August 11, 2005, can be stricken.

---

[2]The presentence report prepared in this matter lists, among other offenses, the following violent actions by defendant Wells: 1) attempted robbery of a pizza delivery person when Wells was only 13 years old; 2) attempting to punch and kick a police officer when apprehended for receiving and concealing a stolen vehicle when Wells was 15 years old; 3) shooting at a victim in a parking lot when the defendant was 16 years old; 4) attempting to strike a police officer with a vehicle when Wells was 17 years old; 5) shooting at four individuals on the same day when the defendant was 18 years old; 6) firing the pistol inside the after-hours club; 7) attempted murder of Officer Willis; and 8) repeatedly jumping from a table onto two other inmates lying on the floor during an altercation while Wells was incarcerated in a Tennessee correctional facility.

Next, in the most significant issue raised by this appeal, the government contends that the district judge erred in refusing to sentence Wells pursuant to the armed career criminal provisions of 18 U.S.C. § 924(e). In relevant part, that statutory subsection provides:

(1) In the case of a person who violates [the felon-in-possession provisions of the Code] and has three previous convictions by any court . . . for a violent felony . . ., committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years . . . .
(2)(B) [T]he term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that –
    (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
    (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .

Both the United States and Wells agree that the defendant has previously been convicted of at least *two* offenses that would qualify as "violent felonies." First, Wells conceded that he was found delinquent at age 16 after he "shot at Torriand L. Thomas in the parking lot at 300 Mulvany, Knoxville, Tennessee." Such an aggravated assault conviction clearly would have resulted in incarceration in excess of one year had the defendant been convicted of the offense as an adult. *See* TENN. CODE ANN. §§ 39-13-102(a)(1) (defining aggravated assault to be an intentional assault using a deadly weapon); 39-13-102(d)(1) (classifying aggravated assault as a Class C felony); 40-35-111(b)(3) (authorizing incarceration of 3-15 years upon conviction for a Class C felony). Furthermore, Wells's admission of guilt in that matter included his recognition that a firearm was used in the crime and that physical force was used against the person of another.

Second, Wells also admitted before the district court his guilt of four drive-by shootings committed on a single day in 1998, when the defendant was 18 years old. Wells was sentenced to concurrent five-year prison terms for each of those four offenses, crimes that clearly involved use of a firearm and use of physical force against other individuals.[3]

The government insists that two other prior adjudications of juvenile delinquency against Wells should also be considered "violent felonies" so as to justify sentencing the defendant as an armed career criminal. In advancing that argument, the United States references Wells's 1993 adjudication of delinquency based upon a plea to the charge of attempted robbery and a 1997 adjudication based upon a charge of aggravated assault. Because the 1993 attempted robbery of a pizza delivery person allegedly involved "pointing a handgun" at the victim, and because the 1997 aggravated assault petition alleged that Wells "intentionally attempted to strike Officer C.J. Sramek of the Knoxville Police Department with the vehicle [the defendant] was driving during an alleged robbery and shooting," the government asserts that both acts "involv[ed] the use or carrying of a firearm" so as to bring the activities within the parameters of the Armed Career Criminal Act.

In denying the requested sentencing enhancement, the district court evaluated only the 1993 attempted robbery adjudication and applied the "categorical approach" mandated in *Taylor v. United States*, 495 U.S. 575 (1990), and *Shepard v. United States*, 544 U.S. 13 (2005). Doing so,

---

[3]The government concedes that the four convictions were properly considered to be only one conviction for purposes of 18 U.S.C. § 924(e) when the defendant fired multiple gunshots into a crowd.

the court found that the adjudication "did not necessarily involve 'the use or carrying of a firearm, knife, or destructive device,' and cannot be used as [a] predicate offense to enhance the defendant's status to armed career criminal."

In *Taylor*, the Supreme Court addressed the question of "whether the sentencing court in applying § 924(e) must look only to the statutory definitions of the prior offenses, or whether the court may consider other evidence concerning the defendant's prior crimes." *Taylor*, 495 U.S. at 600. Relying upon the language of § 924(e) itself, the legislative history surrounding the statute, and "the practical difficulties and potential unfairness of a factual approach,"[4] *id.* at 601, the Court found persuasive those lower court cases holding "that § 924(e) mandates a formal categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." *Id.* at 600. In a narrow range of cases, however, the Court recognized that this "categorical approach" would allow a sentencing court to examine "the charging paper and jury instructions" to determine whether all the elements of the alleged crime were, in fact, committed. *Id.* at 602.

> For example, in a State whose burglary statutes include entry of an automobile as well as a building [thus encompassing crimes not included within the generic definition of "burglary"], if the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, and that the jury necessarily had to find an entry of a building to convict, then the Government should be allowed to use the conviction for enhancement.

*Id.*

In *Shepard*, the Court was asked to expand upon the ruling in *Taylor* and consider "whether a sentencing court can look to police reports or complaint applications to determine whether an earlier guilty plea necessarily admitted, and supported a conviction for, generic burglary." *Shepard*, 544 U.S. at 16. Declining to do so, the majority of the Court clearly and explicitly stated that sentencing courts evaluating the nature of prior convictions for purposes of applying the armed career criminal statute are "generally limited to examining the statutory definition, charging

---

[4] In addressing these "practical difficulties," the Court explained:

> In all cases where the Government alleges that the defendant's actual conduct would fit the generic definition of burglary, the trial court would have to determine what that conduct was. In some cases, the indictment or other charging paper might reveal the theory or theories of the case presented to the jury. In other cases, however, only the Government's actual proof at trial would indicate whether the defendant's conduct constituted generic burglary. Would the Government be permitted to introduce the trial transcript before the sentencing court, or if no transcript is available, present the testimony of witnesses? Could the defense present witnesses of its own and argue that the jury might have returned a guilty verdict on some theory that did not require a finding that the defendant committed generic burglary? If the sentencing court were to conclude, from its own review of the record, that the defendant actually committed a generic burglary, could the defendant challenge this conclusion as abridging his right to a jury trial? Also, in cases where the defendant pleaded guilty, there often is no record of the underlying facts. Even if the Government were able to prove those facts, if a guilty plea to a lesser, nonburglary offense was the result of a plea bargain, it would seem unfair to impose a sentence enhancement as if the defendant had pleaded guilty to burglary.

*Taylor*, 495 U.S. at 601-02.

document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Id.*[5]

At issue in this appeal is not an attempt to classify an *adult conviction* as a predicate offense for armed career criminal purposes, but rather a *juvenile adjudication*. The government contends that such juvenile adjudications should be treated differently and should not be subject to the *Taylor-Shepard* categorical approach, even though acts of juvenile delinquency must still have "as an element" the use or threatened use of physical force or present a serious potential risk of physical injury to another, 18 U.S.C. §§ 924(e)(2)(B)(i) and (ii), in order to be considered predicates for sentence enhancements. The government notes, however, that qualifying delinquent acts must additionally "involv[e] the use or carrying of a firearm, knife, or destructive device." Because such "use" or "carrying" is not an *element* of the charged offense, charging instruments might never mention the presence of such weapons.

Additional difficulties with the application of the categorical approach to juvenile adjudications were recognized by a sister circuit in *United States v. Richardson*, 313 F.3d 121 (3d Cir. 2002). In that case, the court noted:

> While the categorical approach prescribed by *Taylor* is simply stated and relatively easily applied when considering a defendant's prior adult convictions, it can become more difficult when a court must determine whether a juvenile adjudication comes within the [Armed Career Criminal Act]. For one thing, although the categorical approach prohibits factual determinations concerning a defendant's prior convictions, an "act of juvenile delinquency" introduces an additional wrinkle, for it will only count as a violent felony if the offense involved "the use or carrying of a firearm, knife, or destructive device," 18 U.S.C. § 924(e)(2)(B), a seemingly paradigmatic factual determination. For another, the documents that the Supreme Court and the various Courts of Appeals have held that a district court may consider in the context of an adult conviction – the indictment or information, the jury charge, and/or plea agreements – may be nonexistent where there has been an adjudication of juvenile delinquency given that, for starters, there is no right to trial by jury for juvenile offenses.

*Id.* at 126.

Nevertheless, in its opinion in *Richardson*, the Third Circuit concluded that it could "perceive no basis for saying that the reasons the *Taylor* Court found as warranting the categorical as opposed to the factual approach when considering an adult conviction are not equally persuasive when considering a juvenile adjudication." *Id.* That court, therefore, chose to adhere to that categorical approach, even when considering juvenile adjudications, given "[t]he daunting practical difficulties and the due process and Sixth Amendment concerns that surface when a sentencing court makes factual determinations concerning a defendant's prior convictions." *Id.* at 128.

The Third Circuit's approach bears great appeal when considering the morass that could slow the wheels of justice unnecessarily should we adopt the government's position and permit factual inquiry into the circumstances of juvenile crimes. Abandonment of the *Taylor-Shepard*

---

[5]In *United States v. Jones*, 453 F.3d 777, 780 (6th Cir.), *cert. denied*, 127 S.Ct. 611 (2006), this court ruled that criminal complaints – sworn documents submitted in furtherance of criminal prosecutions – "bear . . . substantially greater indicia of reliability than mere police reports." Thus, we held that such a "complaint is a type of record that a district court can properly rely on in determining the nature of predicate offenses, consistent with the standards of *Shepard*." *Id. Jones*, however, involved only the limited inquiry of whether prior offenses constitute a single criminal episode or multiple episodes, an inquiry especially suited to resolution by reference to a criminal complaint.

restrictions on evidence of prior crimes would involve sentencing courts in sometimes lengthy evidentiary presentations and disputes on matters clearly collateral to the crime for which a defendant then stands convicted. In contrast, by adhering to the principles of *Taylor* and *Shepard*, even in the context of juvenile adjudications, district courts will eliminate the need to examine facts relating to crimes sometimes committed in the far distant past. For this reason alone, as well as for the reasons and for the concerns expressed by the Supreme Court in *Taylor*, *see Taylor*, 495 U.S. at 600-01, we opt to follow the Third Circuit's approach to consideration of prior juvenile adjudications in the context of sentencing pursuant to the Armed Career Criminal Act.

The government argues that application of a categorical approach in this case would still allow the district court to consider either Wells's 1993 attempted robbery adjudication or his 1997 aggravated assault adjudication to enhance his sentence. First, the prosecution points out that the juvenile court petition in the 1993 adjudication, on its face, averred that Wells "violated T.C.A. 39-13-402, aggravated robbery, *by pointing a handgun* at Scott L. Wilson and demanding that he give them all of his money. This occurred as the victim was delivering pizza at 601 Buckeye Drive in Knoxville, Knox County, Tn. at approximately 11 p.m. Sept. 18, 1993." (Emphasis added.) Had Wells pleaded guilty to a violation of Tennessee's aggravated robbery statute, the petition's factual recitation could well have justified treating this juvenile adjudication as a predicate offense for armed career criminal purposes. Wells did not plead to the aggravated robbery charge, however, but rather to the lesser offense of attempted simple robbery, a crime defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." TENN. CODE ANN. § 39-13-401(a). Because Wells thus did not admit to criminal activity that necessarily or allegedly involved use of a "firearm, knife, or destructive device," 18 U.S.C. § 924(e)(2)(B), we have no way of knowing whether a firearm was indeed involved in the crime. As we recently held in *United States v. Armstead*, 467 F.3d 943, 949 (6th Cir. 2006), when a defendant pleads to a lesser included offense, our examination of the charging papers to determine whether that defendant previously committed a "crime of violence" is limited "to the elements of the charges that are essential to defendant's plea of guilty . . . ." Because use of a firearm is not essential to the crime of attempted robbery, the 1993 juvenile adjudication could not be used as a third qualifying conviction for sentencing enhancement purposes.

Similarly, Wells's 1997 juvenile adjudication cannot satisfy the *Taylor-Shepard* categorical approach test. Nothing in the language of Tennessee's aggravated assault statute, TENN. CODE ANN. § 39-13-102(a)(1)(B), indicates that an aggravated assault conviction *requires* proof of the use or display of a firearm, knife, or destructive device, as the latter term is defined by 18 U.S.C. § 921(a)(4). Furthermore, even though the defendant entered a plea to the petition alleging an aggravated assault, the factual description of *that offense* does not mandate a conclusion that Wells himself was in possession of such a deadly weapon. Indeed, the petition states simply that "on or about November 14, 1997, [Wells] did intentionally attempt to strike officer C.J. Sramek of the K.P.D. with the vehicle he was driving during a robbery and shooting."

In this instance, the potentially qualifying crime to which Wells entered a plea is the aggravated assault upon Officer Sramek with an automobile, and only that aggravated assault. What, if anything, Wells (or others) may have been doing prior to attempting to run down Officer Sramek is thus irrelevant to the charged crime. The fact that Wells, or his accomplice, used a firearm in a prior robbery does not mean that any such antecedent criminal activity becomes part of the *aggravated assault*. Because the specific crime upon which Wells's 1997 juvenile delinquency adjudication was based did not, therefore, necessarily "involv[e]" the use or carrying of a prohibited weapon, and because Wells did not enter any plea to the alleged robbery and shooting that preceded it, the 1997 adjudication also cannot serve as a third predicate offense to justify imposition of a sentence under the provisions of the Armed Career Criminal Act. *Cf. United States v. Jones*, 332 F.3d 688 (3d Cir. 2003) (enhanced sentencing permissible when defendant was adjudicated delinquent for commission of three offenses – simple assault, aggravated assault, and

violation of the Pennsylvania Uniform Firearms Act – that together established his use of a firearm).

## *CONCLUSION*

For the reasons set out above, we AFFIRM the defendant's sentence but REMAND the case for the limited purpose of correcting the district court's judgment to eliminate the provision of a commencement date on which service of that sentence was to begin.