**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0481n.06
Filed: August 8, 2008

**No. 06-6216**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| MICHAEL J. SHELTON, | ) | EASTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

Before: GILMAN and COOK, Circuit Judges; and COHN, District Judge.[*]

COOK, Circuit Judge. Defendant Michael J. Shelton appeals his sentence under the Armed Career Criminal Act ("ACCA") following his guilty plea and conviction as a felon in possession of a firearm. Shelton argues that the district court erred in sentencing him as an armed career criminal ("ACC"). Because the record supports designating Shelton as an ACC, we affirm.

## I. BACKGROUND

Although federal law normally provides a maximum of ten years in prison for conviction as a felon in possession of a firearm, 18 U.S.C. §§ 922(g)(1), 924(a)(2), the ACCA mandates a

---

[*]The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

minimum fifteen-year sentence for an offender with three prior convictions for violent felonies "committed on occasions different from one another," *id.* § 924(e)(1). After Shelton pleaded guilty to being a felon in possession of a firearm, the presentence report ("PSR") identified four ACCA predicate convictions. The first involved a juvenile adjudication for reckless endangerment. The other three stemmed from a crime spree on March 20, 2003, involving the burglary of Flipside Music Store ("Flipside") and Clark's Barber Shop ("Clark's")—adjoining stores at a strip mall in Erin, Tennessee—and aggravated burglary of Greg Miller's house, located about a third of a mile from the strip mall.

In response to the PSR, Shelton objected to: (1) the finding that the juvenile delinquency adjudication constituted a predicate offense; (2) the finding that the March 20 burglaries constituted three distinct predicate offenses; and (3) any use of the PSR's findings in the court's determination of ACCA predicates. Shelton renewed each of these objections at sentencing.

After acknowledging that "the Supreme Court has told us that what we have to do is just look at the face of the conviction and some very limited other information," the sentencing court concluded: "I think based upon what I have seen and what is in the presentence report, that is not disagreed with, that the defendant does meet the definition of an armed career criminal." The court accepted the PSR's factual findings and, labeling Shelton an ACC, sentenced him to 190 months in prison. Shelton's appeal raises the same substantive issues as his objections in district court.

## II.  ANALYSIS

### A.  Standard of Review

This court reviews de novo the district court's decision to sentence Shelton as an ACC. *United States v. Amos*, 501 F.3d 524, 526 (6th Cir. 2007); *United States v. Hill*, 440 F.3d 292, 295 (6th Cir. 2006).  The Government bears the burden of establishing that Shelton's prior convictions qualify as ACCA predicates.  *See, e.g.*, *United States v. Goodman*, 519 F.3d 310, 316 (6th Cir. 2008).

### B.  Determining ACCA Predicates Under *Shepard*

As a threshold matter, Shelton argues that the district court impermissibly relied on the PSR's findings in assessing whether the juvenile delinquency adjudication and the March 20 burglary convictions qualify as ACCA predicates.  In *Shepard v. United States*, 544 U.S. 13 (2005), the Supreme Court held that in determining whether a prior conviction qualified as an ACCA predicate, sentencing courts may examine only "the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented."  *Id.* at 16; *see also United States v. Taylor*, 413 F.3d 1146, 1157–58 (10th Cir. 2005) (reversing and remanding for further proceedings where the district court relied on the PSR's findings to determine whether prior offenses constituted multiple convictions under the

3

ACCA). Often, a conviction and the statutory definition of the underlying offense are sufficient to establish an ACCA predicate, and other documentation is unnecessary. *Goodman*, 519 F.3d at 317.

Where a court accepts the PSR's findings as to the ACCA predicate offenses, therefore, we ask whether those findings have independent support in sources approved by *Shepard*. *See United States v. Jones*, 453 F.3d 777, 780–81 (6th Cir. 2006); *United States v. Harris*, 447 F.3d 1300, 1306 (10th Cir. 2006); *Taylor*, 413 F.3d at 1157–58. In Shelton's case, the documents before the court independently support his ACC status.

### C. The Juvenile Delinquency Adjudication

A juvenile delinquency adjudication qualifies as a "violent felony" for ACCA purposes if it involves "the use or carrying of a firearm, knife, or destructive device," and either "has as an element the use, attempted use, or threatened use of physical force" against another, or "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B); *see United States v. Ankeny*, 502 F.3d 829, 839 (9th Cir. 2007); *United States v. Wells*, 473 F.3d 640, 648 (6th Cir. 2007). Shelton argues that the district court erred in holding that his juvenile delinquency adjudication for reckless endangerment constitutes an ACCA predicate conviction. We disagree.

First, Shelton argues that in pleading guilty to reckless endangerment, he did not admit to criminal activity necessarily involving the use of a firearm. The juvenile petition accompanying his

reckless endangerment charge, however, explicitly states that Shelton "shot a gun into a house." *Cf. Wells*, 473 F.3d at 649–50 (holding that a juvenile adjudication for aggravated assault did not qualify as an ACCA predicate where the juvenile petition did *not* mandate the conclusion that the offense involved a firearm). Shelton himself conceded this point at sentencing. *See* JA 73 ("[M]e and a friend of mine . . . was walking down an alley, and we was playing with the gun, and it went off.").

Second, Shelton contends that because the juvenile petition does not specify whether he was charged with misdemeanor or felony reckless endangerment, it is not clear that the petition charged him with a felony offense. The Tennessee reckless endangerment statute, however, resolves this issue against Shelton. The statute provides, "[R]eckless endangerment committed with a deadly weapon is a Class E felony." Tenn. Code Ann. § 39-13-103(b). The fact that the petition charges Shelton with reckless endangerment for shooting a gun into a house confirms that Shelton was charged with felony reckless endangerment.

Third, Shelton argues the reckless endangerment adjudication does not qualify as a violent felony because the juvenile petition does not allege that Shelton's actions placed anyone at risk of physical injury. *See* 18 U.S.C. § 924(e)(2)(B)(ii); *United States v. Sawyers*, 409 F.3d 732, 737 (6th Cir. 2005). Once again, however, the Tennessee statute forecloses Shelton's argument. The statute defines reckless endangerment as engaging "in conduct that places or may place another person in imminent danger of death or serious bodily injury." Tenn. Code Ann. § 39-13-103(a). As a matter of law, Tennessee felony reckless endangerment is a violent felony for ACCA purposes. *United*

*States v. Bailey*, 264 F. App'x 480, 482 (6th Cir. 2008); *United States v. Caldwell*, No. 99-6031, 2000 WL 1888682, at \*11 (6th Cir. Dec. 19, 2000). In light of the juvenile petition and the Tennessee statute, the district court did not err in concluding that Shelton's juvenile adjudication qualifies as a predicate conviction under the ACCA.

## D. The March 20 Burglaries

Shelton also contends that the district court erred in agreeing with the PSR's findings that the March 20 burglaries constituted three ACCA predicate offenses and that the Government failed to demonstrate that the burglaries were separate episodes. Because the juvenile adjudication is a valid predicate conviction, whether we vacate or affirm Shelton's sentence depends on whether the March 20 burglaries constitute *at least two* separate offenses. *See* 18 U.S.C. § 924(e)(1). We conclude that the evidence the court could examine under *Shepard* supports finding at least two separate ACCA predicate offenses occurred on March 20, so we affirm.

Although multiple felonies that constitute a "single criminal episode" count as only one predicate conviction, *United States v. Thomas*, 211 F.3d 316, 320–21 (6th Cir. 2000), it is sometimes difficult to label offenses as single or multiple episodes for ACCA purposes, *see United States v. Carnes*, 309 F.3d 950, 955 (6th Cir. 2002) (noting cases that reach "seemingly inconsistent results"); *Thomas*, 211 F.3d at 322 (Clay, J., concurring) (same). In *United States v. Hill*, 440 F.3d 292 (6th Cir. 2006), this court attempted to reconcile its prior decisions by distilling factors for deciding whether felonies constitute single or several criminal episodes. The *Hill* court found "at least three

indicia" of separate offenses: (1) it is possible to identify a clear end to the first offense, followed by a later beginning of the second offense—that is, the felonies are separated by a discernable end and beginning; (2) "it would have been possible for the offender to cease his criminal conduct after the first offense, and withdraw without committing the second offense"; and (3) "the offenses are committed in different residences or business locations." 440 F.3d at 297–98.

In arguing that the burglaries of Miller's house, Flipside, and Clark's are three separate offenses, the Government points to three sets of documents before the district court: (1) affidavits of complaint, (2) grand jury indictments, and (3) judgments of conviction. With respect to the burglary of Flipside and Clark's, these documents provide little insight for a *Hill* analysis. The Government cannot establish affirmatively that there was a "clear end" to one offense before the other, or that Shelton could withdraw from one offense before the other. *See United States v. Murphy*, 107 F.3d 1199, 1210 (6th Cir. 1997) (holding that burglaries of both residences of a duplex were one episode in "the absence of a definable endpoint to the first [offense]"). Likewise, because the record evidence is inconclusive as to whether Shelton ever left Flipside to enter Clark's through an adjoining door, the Government cannot establish that Shelton committed burglaries in "different residences or business locations."

What these documents do demonstrate, however, is that the strip-mall burglaries are distinct from the burglary of Miller's house. A third of a mile separates Miller's house from the strip mall, and charging documents reveal that police discovered all of Miller's stolen property at Shelton's

residence. The indictment charged Shelton with "unlawfully and feloniously" entering Miller's home, JA 129–30, and Shelton himself conceded that he and an accomplice drove to Miller's home after the strip-mall burglaries concluded, JA 72. Given that we are examining "immediately consecutive" offenses, the "principally relevant" fact is that the strip-mall burglaries and the burglary of Miller's house occurred in "different residences or business locations." *United States v. White*, No. 05-6737, 2007 WL 1217960, at *3 (6th Cir. Apr. 25, 2007); *see United States v. Player*, 201 F. App'x 331, 338 (6th Cir. 2006) (distinguishing "easily" between two robberies where the defendant "left the site of the first robbery in order to commit the second"); *United States v. Wyatt*, 189 F. App'x 418, 422 (6th Cir. 2006) ("[T]he fact that robberies were of separate buildings, even if they occurred on the same day or even consecutively, is sufficient to demonstrate they occurred 'on occasions different from one another.'" (quoting *Hill*, 440 F.3d at 298)).

Given the evidence that the court could review under *Shepard*, the burglary of Miller's home was a separate predicate conviction. *See Hill*, 440 F.3d at 298; *Carnes*, 309 F.3d at 955–56; *Wyatt*, 189 F. App'x at 422. Even if the district court erred in concluding that the strip-mall burglaries constituted two ACCA predicates, rather than just one, that error is harmless in view of the three ACCA predicates in the juvenile adjudication, the strip-mall burglaries as a whole, and Miller's home. 18 U.S.C. § 924(e)(1).

## III. CONCLUSION

For the foregoing reasons, we affirm.

8