**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0007n.06

No.  11-2572

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
*Jan 03, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| JOHN ANDREW MEKEDIAK, | ) | THE WESTERN DISTRICT OF |
| | ) | MICHIGAN |
| Defendant-Appellant. | ) | |

**Before:** **KEITH, CLAY, and ROGERS, Circuit Judges.**

**DAMON J. KEITH, Circuit Judge**.  John Mekediak appeals his sentence following a guilty plea to being a felon in possession of a firearm.  He argues that the district court erred by: 1) sentencing him as an armed career criminal, 2) setting his base offense level at 24, and 3) applying a four-level enhancement to his sentence for using a firearm in connection with another felony.  For the reasons detailed below, we **REVERSE** and **VACATE** the sentence in part and **AFFIRM** in part.

**BACKGROUND**

On February 24, 2011, a federal grand jury in Grand Rapids, Michigan indicted John Andrew Mekediak on three counts of being a felon in possession of a firearm.  Mekediak allegedly stole and transported ninety-six firearms across state lines and then sold them on the black market.

Mekediak agreed to a proffer interview with the United States Attorney's Office for the Western District of Michigan on the condition that if he was cooperative, then "nothing either said

or revealed by him" would be used against him.[1]  Appellant Br. at 18, R. 49 at 4.  During the interview, Mekediak informed the Government of an instance in which he traded two stolen firearms for approximately 3.5 grams of cocaine base, referred to by the parties and the district court as "the Minnesota transaction."  He also named the individuals who participated in the Minnesota transaction, one of them being an Edwin Wolf.  Wolf was one of Mekediak's accomplices and was being investigated himself .  Wolf had already completed two proffer interviews with the Government by the time Mekediak was interviewed, but it was Mekediak who first disclosed the Minnesota transaction to the Government.

On August 19, 2011, Mekediak pleaded guilty to one count of being a felon in possession of a firearm pursuant to a plea agreement.  Prior to the sentencing hearing, a Presentence Investigation Report ("PSIR") was prepared and submitted to the district court, recommending a sentencing range of 262–327 months.

The PSIR categorized Mekediak as an armed career criminal ("ACC") based upon the following prior convictions: a 2003 adult conviction in which Mekediak pleaded guilty to a drug offense, specifically possession of a chemical or laboratory equipment that he knew or had reason to know would be used to manufacture a controlled substance; a 1999 adult conviction in which Mekediak pleaded guilty to unarmed robbery; and two 1995 juvenile delinquencies: one for possession of a short-barreled rifle and one for felonious assault.  The PSIR also set Mekediak's base offense level at 24, naming the aforementioned 1999 adult conviction for unarmed robbery and 2003

---

[1] A proffer interview is an interview in which a defendant agrees to disclose information pertinent to the investigation of other suspects.

adult drug offense as qualifying predicate felonies.  Finally, the PSIR recommended a four-level

sentence enhancement for using or possessing a firearm in connection with another felony offense.

The PSIR cited "the Minnesota transaction" as a basis for applying the enhancement.  The PSIR

noted that the information regarding the Minnesota transaction was offered by Edwin Wolf.

Mekediak's total adjusted offense level was 37.

Mekediak objected to the PSIR.  Three of those objections have been preserved for this

appeal:  1) his status as an armed career criminal, 2) his base offense level of 24, and 3) the

application of the four-level possession enhancement to his sentence.  At sentencing, Mark Semear,

the special agent who interviewed both Mekediak and Wolf, testified that the interviews took place

months apart.  He attested that when Wolf divulged the Minnesota transaction, he was asked open-

ended questions and that no one indicated that they had already heard about the Minnesota

transaction from Mekediak.  He further testified that he did not have his notes from Mekediak's

interview with him at Wolf's interview, so he would not have been able to refer to the details from

Mekediak's interview.  The district court overruled Mekediak's objections and imposed a sentence

below his guideline range, reasoning that his criminal history category of VI was inappropriately

high.  Mekediak was sentenced to 240 months in prison.  We address each of Mekediak's objections

below.

## ANALYSIS

### I.  Armed Career Criminal Status

Mekediak challenges his status as an ACC.  The district court considered the following in

order to sentence Mekediak under the Armed Career Criminal Act ("ACCA"): a 2003 conviction for

possession of drug manufacturing materials, a 1999 conviction for unarmed robbery, and two juvenile delinquencies from 1995—one for possession of a firearm and one for felonious assault. Mekediak argues that the district court improperly combined his individual juvenile delinquencies in order to make them into one "violent felony" as defined by the ACCA. Mekediak was not an ACC because his juvenile delinquencies were not predicate felonies for ACCA purposes.

## A. The Armed Career Criminal Act

Federal law prohibits a previously convicted felon from possessing a firearm, imposing a maximum sentence of ten years' imprisonment. 18 U.S.C. § 922(g)(1). The ACCA imposes a fifteen-year mandatory minimum sentence on any offender categorized as an ACC. 18 U.S.C. § 924(e)(1). Any combination of three previous convictions constituting either a "violent felony" or a "serious drug offense" will lead to a classification as an ACC. *Id.*; *United States v. Goodman*, 519 F.3d 310, 316 (6th Cir. 2008). The Government bears the burden of proving that a conviction qualifies as a predicate felony. *Goodman*, 519 F.3d at 316. We review *de novo* a district court's determination that a defendant is eligible to be sentenced as an ACC under the ACCA. *Id.*

### 1. Violent Felony

The district court combined Mekediak's 1995 juvenile delinquencies into one act of juvenile delinquency that met the ACCA's definition of "violent felony." A crime can meet the definition of "violent felony" in one of three ways: 1) the crime has the requisite element of actual, attempted, or threatened use of physical force against the person of another; 2) the crime is one of the statute's specifically identified offenses–burglary, arson, extortion, or a crime involving the use of explosives; or 3) the crime "otherwise involves" conduct that creates a high risk of physical harm to others. 18

U.S.C. § 924(e)(2)(B). This last category is often referred to as "the residual clause." *See United States v. Jones*, 673 F.3d 497, 504–05 (6th Cir. 2012). Offenses that typically qualify under the residual clause are "roughly similar, in kind as well as in degree of risk posed" to the enumerated felonies. *Begay v. United States*, 553 U.S. 137, 143 (2008). The statute's specifically identified offenses involve "purposeful, violent, and aggressive conduct." *Id*. at 144–45. Thus, crimes with "a stringent mens rea requirement" typically qualify if, "as a categorical matter, [they present] a serious potential risk of physical injury to another" in a way "comparable to that posed by its closest analog among the [ACCA's] enumerated offenses." *Sykes v. United States*, 131 S. Ct. 2267, 2273, 2275 (2011) (quoting *James v. United States*, 550 U.S. 192, 203 (2009)). A crime committed by a juvenile (an act of juvenile delinquency) can also constitute a violent felony, but only if, in addition to meeting the qualifications for an adult predicate offense, it also "involv[es] the use or carrying of a firearm, knife, or destructive device." 18 U.S.C. § 924(e)(2)(B).

## B.     The Categorical and Modified Categorical Approaches

To determine whether a prior conviction constitutes a qualifying crime—in this case, a "violent felony," we use a two-step analysis. First, we employ a "categorical approach." *Taylor v. United States*, 495 U.S. 575, 600, 602 (1990); *United States v. Gibbs*, 626 F.3d 344, 352 (6th Cir. 2010). To do this, we look only to the "statutory definition of the prior offense and not to the particular facts underlying the defendant's conviction." *United States v. Kearney*, 675 F.3d 571, 574 (6th Cir. 2012). In other words, "we consider the offense generically . . . in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *Begay*, 553 U.S. at 141. If the offense requires proof of facts that meet the

ACCA's definition of a qualifying offense, then the conviction automatically counts as a predicate felony. *See Taylor*, 495 U.S. at 600.

However, if it is possible to violate a statute in a way that would constitute a qualifying crime and in a way that would not, a second inquiry is necessary. *See Shepard v. United States*, 544 U.S. 13, 17 (2005). In such a case, we use a "modified categorical approach" to determine whether there was a finding that the ultimate crime of conviction "'necessarily' involved (and a prior plea necessarily admitted) facts equating" to a qualifying crime. *Id*. at 24. Such a finding must be contained within the "*Shepard* documents." *Id*. at 26; *United States v. Armstead*, 467 F.3d 943, 948 (6th Cir. 2006). *Shepard* documents only include "the terms of the charging document, . . . [the] plea agreement, . . . or . . . some comparable judicial record." *Shepard*, 544 U.S. at 26.

C.     Analysis

In 1995, Mekediak was adjudicated as a juvenile on two counts—possession of a short-barreled rifle and felonious assault. R. 42-1. Mekediak argues that the district court improperly applied the modified categorical approach when it combined his individual juvenile offenses together in order to make them into one "violent felony" for the purposes of the ACCA. We agree.[2]

a.     **Possession of a Short-Barreled Rifle**

One of Mekediak's juvenile delinquencies was for "possession of a short-barreled rifle" in violation of Michigan Compiled Laws § 750.224b. Categorically, possession is not considered a "violent felony" under the ACCA. *See United States v. Amos*, 501 F.3d 524, 530 (6th Cir. 2007)

---

[2]   A defendant must have three qualifying convictions in order to be sentenced as an ACC. 18 U.S.C. § 924(e)(1). Mekediak argues that none of the prior offenses qualified for consideration under the ACCA. Because his juvenile delinquencies cannot qualify as a predicate offense, we decline to address Mekediak's other arguments.

("[T]he plain language of the [ACCA] evinces an intent to include only offenses with more assertive, violent conduct than mere possession."). Therefore, Mekediak's delinquency for possession of a short-barreled rifle is not a qualifying act of juvenile delinquency.

### b.      Felonious Assault

Mekediak's other delinquency was for "felonious assault" in violation of Michigan Compiled Laws § 750.82. This law is ambiguous under a categorical approach because the statutory definition includes assault with a variety of items—not only guns and knives, but also iron bars, clubs, and brass knuckles—articles that we have commented are not included in the ACCA's definition of a firearm, knife, or "destructive device."[3] Mich. Comp. Laws § 750.82; *see United States v. Eubanks*, 617 F.3d 364, 369 (6th Cir. 2010). Therefore, the felonious assault count requires a modified categorical analysis to determine whether the terms of the *Shepard* documents narrow it to a point that it "'necessarily involved' (and a prior plea necessarily admitted) facts equating" to a felonious assault that involved the use or carrying of a firearm, knife, or destructive device. *Shepard*, 544 U.S. at 24.

Here, the *Shepard* documents consist of the petition and the order of disposition. The petition, dated January 30, 1995, recites the count as follows "[O]n or about January 22, 1995, in the County of Calhoun, said juvenile did make an assault upon Louise W. Mekediak with intent to

---

[3] 18 U.S.C. § 921(a)(4) defines "destructive device" as "any explosive, incendiary, or poison gas," "any type of weapon . . . which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant," and "any combination of parts either designed or intended for use in converting any device into any destructive device." *Id*. The statute also states that "'destructive device' shall not include any device which is neither designed nor redesigned for use as a weapon." *Id*. Since this definition appears in the same chapter of the *United States Code* that defines a violent felony under the ACCA, it follows that § 921(a)(4) defines "destructive device" for the ACCA. Because iron bars and clubs do not meet § 921(a)(4)'s definition, such items are not "destructive devices" for the purposes of the ACCA.

commit the crime of murder; Contrary to MCL 750.83." R. 42-1. The order of disposition states that "the court found that the following material allegations of the petition dated January 30, 1995 were sustained" and lists the allegation as "Count 1, Felonious Assault M.C.L. § 750.82." *Id.*

Neither document narrows the felonious assault to the point that Mekediak's admitted criminal activity "necessarily or allegedly involved use of a 'firearm, knife, or destructive device[.]'" *United States v. Wells*, 473 F.3d 640, 649 (6th Cir. 2007) (quoting 18 U.S.C. § 924(e)(2)(B)). In *Wells*, we held that a juvenile delinquency did not satisfy the modified categorical approach where the petition noted the use of a firearm but the pleaded offense did not. *Wells*, 473 F.3d at 649. Here, the petition does not even mention a firearm. Although the admitted crime could have involved a firearm, "we have no way of knowing whether a firearm was indeed involved in the crime." *Id.*

The district court applied the modified categorical approach to the firearm possession count and the felonious assault count collectively so that, together, the separate offenses blended to satisfy the ACCA's requirements. The district court reasoned that because "the two [counts] came in together as guilty findings on . . . [the] same date, same location," they could be combined. R. 49 at 56. In support of this position, the Government advances a case from the Third Circuit which concluded that "a sentencing court may consider all the statutory elements underlying the juvenile adjudication collectively." *United States v. Jones*, 332 F.3d 688, 694 (3d Cir. 2003). This ignores the fact that Mekediak's firearm possession count should not be analyzed under the modified categorical approach at all. According to its statutory definition, it categorically is not a violent felony, as demonstrated above.

Supreme Court precedent decided after *Jones* warns us to reserve the modified categorical approach only when the categorical approach fails. *See Taylor*, 495 U.S. at 602 (limiting modified categorical approach to a "narrow range of cases"); *Shepard*, 544 U.S. at 17 (explaining the modified categorical approach as "an exception to [the] categorical approach") (internal citation and quotation marks omitted). Precedent from this circuit compels us to do the same. *See United States v. Armstead*, 467 F.3d 943, 948 (6th Cir. 2006); *Jones*, 673 F.3d at 504 n.2. What is more, we have already rejected the argument that juvenile adjudications merit being treated any differently. *See Wells*, 473 F.3d at 649 ("[W]e opt to [apply the categorical approach] to consideration of prior juvenile adjudications in the context of sentencing pursuant to the Armed Career Criminal Act.").

Juvenile offenses may not be combined to meet the ACCA's definition of a predicate felony and Mekediak's juvenile delinquencies were not a "violent felony." After striking these offenses Mekediak does not have the three qualifying felonies required to be sentenced under the ACCA. *See* 18 U.S.C. § 924(e)(1). Accordingly, Mekediak's sentence with regard to his status as an ACC is vacated.[4]

## II.     Base Offense Level of 24

Of the two convictions used to set his base offense level at 24, Mekediak only disputes the use of his 1999 conviction for unarmed robbery as a "crime of violence" under the United States Sentencing Guidelines ("USSG"). However, under the categorical approach, unarmed robbery fits comfortably within the residual clause of "crime of violence."

---

[4] Due to the nature of Mekediak's specific offense, his ACC status did not affect his adjusted offense level of 37. However, it did affect his criminal history category by changing it from a category IV to a category VI.

**A.      The United States Sentencing Guidelines**

We review legal conclusions regarding the application of the USSG *de novo*. *United States v. Jackson*, 635 F.3d 205, 207 (6th Cir. 2011). Pursuant to Section 2K2.1(a)(2) of the USSG, a defendant's initial base offense level is set at 24 if the defendant has at least two prior felony convictions that constitute either a "crime of violence" or a "controlled substance offense." U.S. Sentencing Guidelines Manual § 2K2.1(a)(2). "Crime of violence" under the USSG is defined in the exact same terms as "violent felony" under the ACCA. *See* U.S. Sentencing Guidelines Manual § 2K2.1(a)(2) cmt. n.1 & 4B1.2(a); 18 U.S.C. § 924(e)(2)(B). In addressing USSG claims, we use the same two-step process used to analyze ACCA claims. *United States v. Montanez*, 442 F.3d 485, 489 (6th Cir. 2006) (citing *United States v. Galloway*, 439 F.3d 320, 323 (6th Cir. 2006).

**B.      Analysis**

The PSIR cited Mekediak's 1999 adult conviction for unarmed robbery and his 2003 adult conviction for possession of drug manufacturing materials in order to set his base offense level at 24. However, as conceded at oral argument, Mekediak only challenges the use of the 1999 conviction. In 1999, unarmed robbery in violation of Michigan Compiled Laws § 750.530 was a felony accomplished without a dangerous weapon and in one of three ways: "by force and violence, or by assault or putting in fear." Mich. Comp. Laws § 750.530 (1999) (amended 2004).

Michigan's unarmed robbery offense is a specific intent crime. *See Michigan v. Haverson*, 804 N.W.2d 757, 761 (Mich. Ct. App. 2010). Thus, we may analyze whether the risk of harm posed by unarmed robbery is categorically comparable to that posed by the ACCA's enumerated offenses. *See Sykes*, 131 S. Ct. at 2275. The Supreme Court has explained that the enumerated offense of

burglary "is dangerous because it can end in confrontation leading to violence." *Id*. at 2273 (citing *James v. United States*, 550 U.S. 192, 200 (2007)). Likewise, the Court of Appeals for the Seventh Circuit held that unarmed robbery in violation of Michigan Compiled Laws § 750.530 "in some ways presents a greater risk of violent confrontation" than burglary because it "always occurs in the victim's presence," and the offender may be "prepared to use violence if necessary to carry out his plans." *United States v. Tirrell*, 120 F.3d 670, 681 (7th Cir. 1997) (internal citation and quotation marks omitted). This analysis is consistent with precedent from this Court holding that larceny from the person, a lesser included crime of robbery, is a crime of violence for the purposes of the USSG. *See United States v. Payne*, 163 F.3d 371, 375 (6th Cir. 1998) ("[A]lthough larceny from the person typically involves no threat of violence, the risk of ensuing struggle is omnipresent.") (internal quotation marks omitted). For these reasons, unarmed robbery categorically creates a sufficiently comparable risk of injury to another as the risk posed by burglary. Consequently, it is a crime of violence for the purposes of the ACCA.

## III.     Four-Level Enhancement

Mekediak argues that the district court improperly applied a four-level enhancement to his sentence for using or possessing a firearm in connection with another felony offense. Specifically, Mekediak objects to the use of the "Minnesota transaction"—the incident in which he traded stolen firearms for cocaine base—as a basis for applying the enhancement. He claims that the use of the Minnesota transaction violated his proffer agreement. Not so. The district court had sufficient independent evidence to use the Minnesota transaction as a basis to support the enhancement.

A.      **Sentence Enhancements Under the USSG**

Once a defendant's base offense level is calculated, that level may be enhanced if certain aggravating factors are present. A four-level increase applies if the defendant "used or possessed any firearm or ammunition in connection with another felony offense." U.S. Sentencing Guidelines Manual § 2K2.1(b)(6)(B) (2011). The Government must establish a nexus between the firearm and the independent felony by a preponderance of the evidence. *United States v. Angel*, 576 F.3d 318, 321 (6th Cir. 2009). There are restrictions, however, on how the government may argue for an enhancement. Information gained from cooperation agreements "shall not be used in determining the applicable guideline range, except to the extent provided in the agreement." U.S. Sentencing Guidelines Manual § 1B1.8(a) (2011). This USSG provision "unquestionably forbids the government to influence the sentencing range by disclosing revelations made by a defendant in the course of cooperation as required by a plea agreement." *United States v. Miller*, 910 F.2d 1321, 1325 (6th Cir. 1990). We review legal conclusions regarding the application of the USSG *de novo*, while factual findings are reviewed for clear error. *Jackson*, 635 F.3d at 207.

B.      **Analysis**

Mekediak does not dispute that the Minnesota transaction—the incident in which he traded stolen firearms for cocaine base—qualifies him for a four-level enhancement. Instead, he argues that the PSIR's details regarding the Minnesota transaction were obtained in violation of his proffer agreement because it was he who first disclosed the Minnesota transaction to the Government and he who identified Wolf as a participant. He contends that the interviewing officers led Wolf to detail the Minnesota transaction by indicating that they already knew about it, and thereby violated one

proffer agreement clause forbidding the Government to use anything "said or revealed" by Mekediak.

While the circumstances could be suspicious, in this case the Government met their evidentiary burden—a preponderance of the evidence—with proof independent of Mekediak's interview. Mark Semear, the special agent who interviewed both Mekediak and Wolf, testified at the sentencing hearing that the interviews took place months apart, that he did not refer to his notes from Mekediak's interview during his interview with Wolf, and that when Wolf divulged the Minnesota transaction, he was asked open-ended questions and no one indicated that they had already heard about the Minnesota transaction from Mekediak. The district court found that while Mekediak's testimony may have been in the officers' minds, they did not confront Wolf with the information to elicit more details. Furthermore, the district court ultimately concluded that Semear's testimony was sufficient in itself to support the enhancement by a preponderance of the evidence.

Being mindful that we review a district court's findings of fact for clear error, we are not firmly convinced that the Government used privileged information against Mekediak. *See United States v. Davis*, 912 F.2d 1210, 1213 (10th Cir. 1990) (holding that there was no violation of an immunity agreement where there was "no indication that the co-defendants' statements were elicited as a result of [the defendant's plea agreement] and [the defendant] provided no evidence that, had he refused to cooperate, his co-defendants likewise would not have offered the information."); *accord United States v. Gibson*, 48 F.3d 876, 879 (5th Cir. 1995) (per curiam). For these reasons, we cannot conclude that it was improper to apply the four-level enhancement.

## CONCLUSION

For the foregoing reasons, we **VACATE** the sentence and **REMAND** for the limited purpose

of considering the application of the ACCA to Mekediak's sentence. We **AFFIRM** the remainder

of the district court's judgment.