**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0044n.06

No. 10-5068

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Jan 12, 2012*

LEONARD GREEN, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) On Appeal from the United States |
| | ) District Court for the Middle |
| TIMOTHY ORLANDO WHITE, | ) District of Tennessee |
| | ) |
| Defendant-Appellant. | ) |

Before:    BOGGS and MCKEAGUE, Circuit Judges; and GOLDSMITH,[*] District Judge.

BOGGS, Circuit Judge.   Defendant–appellant Timothy White was convicted and sentenced to 200 months of imprisonment for being a convicted felon in possession of a firearm and a convicted felon in possession of ammunition.   White appeals his conviction and the sentencing court's determination that he qualified as an armed career criminal under the Armed Career Criminal Act (ACCA).   We affirm.

I

White makes two arguments on this direct appeal: first, that the district court erred when it denied his two motions for reconsideration of the denial of his pre-trial motion to suppress the handgun found in his car; second,  that it erred in overruling his objection to the pre-sentence report's

---

[*] Hon. Mark A. Goldsmith, United States District Judge for the Eastern District of Michigan, sitting by designation.

conclusion that he was an armed career criminal, based on its classification of his juvenile adjudication as a violent felony under the ACCA.

White was arrested during a traffic stop in Nashville, Tennessee, which began when Officer Wesley Terry of the Metro Nashville Police Department pulled White over for not wearing his seatbelt. Terry testified that when he approached White's car, he saw a "corner baggie"—a corner of a plastic sandwich bag that has been cut off. Terry testified that, based on his experience, he knew such a baggie was often used as a way to package drugs. When Terry asked White to step out of the vehicle, he saw two marijuana blunts (marijuana rolled in cigar paper) between the door and the front seat. Terry then performed a pat-down of White and felt a large bag of loose items that he said he knew, based on his experience, were bullets. He retrieved the bag, which contained eleven .38-caliber bullets. Terry then searched White's other pocket and found a small amount of what he believed to be marijuana. Terry moved White to his patrol car and another officer, Officer Grindstaff, searched White's car. Grindstaff found a .38-caliber handgun under the driver's seat. At that point, White was formally arrested and read his *Miranda* rights.

A federal grand jury charged White with one count of being a convicted felon in possession of a firearm and one count of being a convicted felon in possession of ammunition, each in violation of 18 U.S.C § 922(g)(1).

White made one pretrial motion to suppress the gun found in his car, one pretrial written motion to reconsider the denial of his motion to suppress, and one oral motion at trial to reconsider the denial of his motion to suppress. In his original motion to suppress, White argued that he was wearing his seatbelt, so Officer Terry did not have probable cause to make the traffic stop that led

to the search of this car and the discovery of the gun. Alternatively, White suggested that Officer Terry could not have seen that White was not wearing his seatbelt because of the location of Officer Terry's car. Therefore, White implied that Terry had not actually seen that White was not wearing his seatbelt when he was pulled over.

At the suppression hearing, Officer Terry testified about his recollection of the stop, the location of his car in relation to White's, and how fast the cars were traveling. He stated that Officer Grindstaff, in a separate car, had initially passed White's car when White was parked on the side of the road on 41st Avenue. Grindstaff noticed at that time that White and Hyde, his passenger, were not wearing seatbelts. He radioed Officer Terry this information. Officer Terry said that he was about half a block behind White when White then pulled away and started driving. He initially estimated this distance as being fifty feet, qualifying the estimate by saying, "I would say it was approximately that. Not too far behind [White's car]." He testified that at a distance of one to two car lengths behind White he could see that White was still not wearing his seatbelt. He testified that he then activated his lights. He testified that White was slow to stop and turned the corner before stopping. Tony Hyde, White's passenger, also testified at the hearing, stating that he and White were both wearing their seatbelts at the time of the stop. The district court explicitly credited Terry's version of events over Hyde's. After the hearing, White's motion to suppress the gun from evidence was denied.

White filed his first motion for reconsideration eight months after the suppression hearing, but several months before trial began. White asked the court to find that Officer Terry testified falsely in the suppression hearing and that the stop had been unconstitutional. White's main

argument was that Terry's car was initially too far away from White's to allow Terry to catch up to White and see that he was not wearing a seatbelt in the few seconds that Terry said it took him to catch up to White's car. In support of the motion, White offered a hand-marked map, purporting to show that the initial distance between Terry and White was 500 feet, not 50 feet as Terry had estimated at the suppression hearing. The court denied the motion, stating that the evidence White presented was not unavailable at the time of the suppression hearing and that White's motion, coming eight months later, was "too late without sufficient justification."

At trial, White made a second, oral, motion for reconsideration of the motion to suppress after cross-examining Officer Terry. During cross-examination, White showed aerial photos of the streets involved in the stop and showed Terry the map of 41st Avenue that he had provided in his first motion to reconsider. He questioned Terry about the accuracy of his estimation at the suppression hearing that he was "probably 50 foot" behind White when White pulled away from the curb and began driving down the block. Terry admitted that the distance was more than 50 feet as he looked at the photos, but stated that he had been estimating. The fact that Terry had only been estimating in his suppression-hearing testimony was re-emphasized by the government on re-direct examination. At the end of the re-direct examination, White made the oral motion to reconsider the denial of the motion to suppress. After argument from both sides, the judge stated: "[T]here are what might be charitably recognized as minor discrepancies as to time and distance or what was characterized as an estimate by Officer Terry. But in the Court's view, none of it is of such proportion as to undermine the integrity of the prior ruling." The court then denied the motion.

A jury found White guilty of both counts charged in the indictment.

At sentencing, White's pre-sentence report (PSR) classified him as an armed career

criminal. The ACCA provides that if a defendant violates 18 U.S.C. § 922(g) and has three

previous convictions for a violent felony or a serious drug offense, or both, committed on

different occasions from one another, then the defendant will receive a mandatory minimum

sentence of fifteen years in prison. 18 U.S.C. § 924(e)(1). A "violent felony" is defined as

> "any crime punishable by imprisonment for a term exceeding one year, or *any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult*, that (1) has as an
> element the use, attempted use, or threatened use of physical force against the person of another;
> or (2) is burglary, arson, or extortion, or otherwise involves conduct that presents a serious
> potential risk of physical injury to another."

18 U.S.C. § 924(e)(2)(B) (emphasis added). White's record contained two prior violent felonies,

undisputed on appeal, and a juvenile adjudication for aggravated assault. The sentencing judge

overruled White's objection to the PSR's classification of the juvenile adjudication as a violent

felony. The judge found that the adjudication was a violent felony, that White therefore had three

prior violent felonies, and that White therefore qualified as an armed career criminal. As such, he

was subject to the ACCA's fifteen-year mandatory-minimum sentence. White was sentenced to 200

months of imprisonment.

II

A

On appeal, White argues that the district court erred in refusing to grant his two motions to

reconsider the denial of his original motion to suppress the handgun found in his car. This court

reviews a denial of a motion to reconsider the suppression of evidence for an abuse of discretion. *United States v. Smith*, 421 F. App'x 572, 573 (6th Cir. 2011). We review the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Hinijosa*, 606 F.3d 875, 880 (6th Cir. 2010).

White argues that new evidence introduced at trial—namely, the hand-marked map showing that the original distance between White's car and Officer Terry's was 500 feet—disproved Officer Terry's testimony from the suppression hearing. White argues that Terry would have had to have been driving implausibly fast to travel 500 feet and catch up with White's car before seeing that White was not wearing his seatbelt and activating his lights. White argues that the trial court abused its discretion when it did not "closely scrutinize" this new evidence..

The decision to reopen a suppression hearing is left to the sound discretion of the court. *United States v. Carter*, 374 F.3d 399, 405 (6th Cir. 2004), *vacated on other grounds*, *Carter v. United States*, 543 U.S. 1111 (2005). Generally, a court should be reluctant to reopen a case, and that principle has been applied to suppression hearings. *See United States v. Blankenship*, 775 F.2d 735, 740 (6th Cir. 1985) (stating that courts should be extremely reluctant to reopen cases); *United States v. Kithcart*, 218 F.3d 213, 219–20 (3rd Cir. 2000) (applying this principle to suppression hearings); *Carter*, 374 F.3d at 405 (citing with approval *Kithcart*'s application of the *Blankenship* standard to a motion to reopen a suppression hearing). *Carter* and *Blankenship* instruct the court to consider several factors in deciding whether or not to grant a motion to reconsider. First, the party seeking to reopen must provide a reasonable explanation for failing to present the evidence initially. *Carter*, 374 F.3d at 405. Then the timeliness of the motion, the character of the testimony, the effect

of granting the motion, and whether the opposing party will be prejudiced by reopening the hearing should be considered. *Blankenship*, 775 F.2d at 741.

The district court did not abuse its discretion when it denied White's motion to reconsider. In its written order denying White's first motion to reconsider, the court explicitly discussed the relevant factors. Applying *Carter* and *Blankenship*, the court reasoned that the evidence White introduced at trial had not been previously unavailable; after all, White could have cross-examined Officer Terry about the relevant distances at the suppression hearing. The court further noted that White filed the first motion to reconsider eight months after the suppression hearing, without giving any reason for the delay. It noted that Officer Terry made it clear in his testimony that he was estimating both distance and speed, and that the judge who held the pre-trial suppression hearing expressly credited Officer Terry's testimony over that of Tony Hyde, White's passenger, who had testified that both he and White were wearing their seat belts at the time of the stop. Finally, the court stated that reopening the hearing would prejudice the government by forcing it to defend its position again against evidence that could have been mustered at the first hearing. After weighing these factors, the court denied White's motion. Similarly, in response to White's second, oral, motion to reconsider, the judge stated that there were no new facts presented "or any other matter that really casts a reasonable doubt on the pretrial ruling." In so ruling, the trial court did not abuse its discretion. Therefore, we hold that the district court properly denied White's motions to reconsider his motion to suppress the gun from evidence.

B

In the second and final issue raised on appeal, White argues that the sentencing judge erred in overruling his objection to the PSR's classification of his juvenile adjudication for aggravated assault as a violent felony under the ACCA.

We review a trial court's determination that a conviction was for a crime of violence for purposes of the ACCA de novo. *United States v. Wilson*, 168 F.3d 916, 926 (6th Cir. 1999).

The ACCA states that if a defendant violates 18 U.S.C. § 922(g) and has three previous convictions for a violent felony or a serious drug offense committed on different occasions from one another, then the defendant will receive a mandatory minimum sentence of fifteen years in prison. 18 U.S.C. § 924(e)(1). A "violent felony" is defined as:

> "any crime punishable by imprisonment for a term exceeding one year, or *any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult*, that (1) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (2) is burglary, arson, or extortion, or otherwise involves conduct that presents a serious potential risk of physical injury to another."

18 U.S.C. § 924(e)(2)(B) (emphasis added).

To determine whether a prior conviction or adjudication qualifies as a violent felony for purposes of the ACCA, the Supreme Court requires a sentencing judge to use a "categorical approach" to defining the offense at issue. *See Taylor v. United States*, 495 U.S. 575, 600 (1990) (establishing the categorical approach in the context of offenses tried to a jury); *Shepard v. United States*, 544 U.S. 13, 14 (2005) (modifying the categorical approach to accommodate non-jury adjudications such as bench trials or guilty pleas). The categorical approach is a uniform method

of determining whether an act constitutes a violent felony for purposes of the ACCA. A sentencing court may look only at certain documents in determining whether a prior offense was a violent felony. *See, e.g.*, *Taylor*, 495 U.S. at 601 (stating that an approach in which the sentencing court could consider any document, including, for example, a police report, has "practical difficulties" and is "potential[ly] unfair"). Under *Taylor*, a sentencing court must first look only to the fact of conviction and the statutory definition of the prior offense to determine whether the conviction necessarily included conduct that would qualify it as a violent felony. In cases where the jury was actually required to find specific elements, *Taylor* stated that the court may go beyond the mere fact of conviction and look to the charging paper and jury instructions to see if the verdict necessarily rested on qualifying conduct. *Shepard* modified the categorical approach for prior offenses that came from bench trials and plea agreements. *Shepard* stated that the categorical approach to determining whether an offense tried in a bench trial is a violent felony for purposes of the ACCA requires the sentencing judge to look only at the statutory definition of the offense, charging documents, and the bench-trial judge's formal rulings of law and findings of fact. *Shepard*, 544 U.S. at 20.

White's PSR listed two uncontested violent felonies and one juvenile adjudication for aggravated assault. White argues that the sentencing court departed from the categorical approach in classifying the juvenile adjudication as a violent felony. He argues that if the court had used the categorical approach correctly it could not have determined that the adjudication was a violent felony because those documents did not show that the offense was committed with a gun, knife, or destructive device. Therefore, he argues, the court erred in determining that he had three prior

violent felonies and qualified as an armed career criminal. White is incorrect. The judge correctly followed the categorical approach, and the documents that he properly examined were narrowly drawn, covering only conduct that involved the use of a firearm; therefore, the juvenile adjudication was properly designated to be a violent felony.

White's juvenile adjudication was imposed by a judge without a jury, similar to a bench trial. Closely observing *Shepard*, the sentencing judge in our case looked only at the statutory definition of the offense, the charging documents, and the juvenile judge's order of adjudication to determine whether the juvenile adjudication was a violent felony for purposes of the ACCA.[1] Formal rulings of law and findings of fact by the juvenile judge, if any were made, were not in the record before the sentencing court.[2]

We review these materials to determine whether the district judge properly categorized the prior juvenile conviction as a violent felony. The definition of the aggravated-assault statute under which White was convicted is, by itself, ambiguous. The crime can be accomplished with or without the use of a firearm. A person may commit aggravated assault by committing simple assault and one of the following: (A) causing serious bodily injury to another, (B) using or displaying a deadly weapon, or (C) attempting or intending to cause bodily injury to another by strangulation. TENN. CODE ANN. § 39-13-102(a)(1)(A)-(C). *See also Wells*, 473 U.S. at 649 (holding that the Tennessee

---

[1]*United States v. Wells*, 473 F.3d 640, 649 (6th Cir. 2007), explicitly held that the Taylor/*Shepard* categorical approach applies to prior juvenile adjudications.

[2]The sentencing judge specifically disregarded other documents that he deemed to be outside of the scope of the categorical approach: the arrest order, the probation officer's report, and the affidavit supporting the arrest order.

aggravated assault statute does not necessarily require proof of the use or display of a firearm, knife, or destructive device). The charging petition charged White with violations of simple assault under TENN. CODE ANN. § 39-13-101 and aggravated assault under TENN. CODE ANN. § 39-13-102 and alleged the following:

> [T]he subject intentionally or knowingly did cause [victim] to reasonably fear imminent bodily injury by use of a deadly weapon, to wit: a handgun. The subject intentionally, knowingly, or recklessly did cause bodily injury to [victim]. In support of these allegations the petitioner alleges the following specific facts: At Pearl-Cohn High School, the subject held a gun on Emanuel Leach, then hit him in the mouth with the gun and caused an injury requiring stitches.

The order of adjudication indicates that the White pled not guilty, the juvenile judge found him guilty of aggravated assault, and the judge dismissed the simple assault charge. Based on these documents, the sentencing judge found that White's adjudication necessarily involved the use of a firearm. Only the charging document, and not the statutory definition of aggravated assault or the juvenile judge's order of adjudication, placed White's offense squarely within the ACCA's definition of a violent felony.

As required by the ACCA, the sentencing judge next analyzed White's juvenile conviction to determine if the crime of aggravated assault would have been punishable by imprisonment for a term exceeding a year, if the crime had been committed as an adult. The court found that aggravated assault with a firearm is a Class C felony under Tennessee law, punishable "by not less than three (3) and no more than fifteen (15) years in prison." *White*, 683 F. Supp. at 621 (citing TENN. CODE ANN. §§ 39-13-102(e)(1), 40-35-111(b)(3)). The sentencing court found that the crime charged in

- 11 -

the juvenile adjudication was a violent felony for purposes of the ACCA. White thus had committed three prior violent felonies and was sentenced as an armed career criminal.

On appeal, White argues that the sentencing judge improperly expanded the categorical approach when he looked at the portion of the charging document that mentioned a handgun. White does not argue that the sentencing judge could not look at the charging document at all. Instead, he tries to break up the charging document into parts. He argues that the "section" of the charging document discussing the handgun was not "part and parcel of the formal charge" and the sentencing court violated the categorical approach by looking at it. *Shepard* clearly states, though, that a sentencing judge may look at the "charging document." *See Shepard*, 544 U.S. at 16 ("[A] later court determining the character of [an offense] is generally limited to examining the . . . charging document . . . .").

This Circuit, however, has considered both the statutory provisions and factual recitals in a charging instrument to determine whether it sufficiently narrowed the charge to cover only qualifying conduct. In *United States v. Mendoza-Mendoza*, 239 F. App'x 216 (6th Cir. 2007), this court examined the charging papers "to determine which version of the aggravated assault statute [defendant] was convicted under." *Id.* at 219. The court then relied on information in the charging document to determine that the defendant pleaded guilty to the provision § 39-13-102(a)(2)(B). *Ibid.* ("The criminal information, which states that Mendoza acted 'recklessly' and committed aggravated assault 'by the use or display of a deadly weapon' makes clear that he specifically pleaded guilty to TENN. CODE ANN. § 39-13-102(a)(2)(B)."). *See also Wells*, 473 U.S. at 649 (noting that had

defendant pled guilty to the offense for which he was charged, rather than a lesser offense, "the petition's factual recitation could well have justified treating this juvenile adjudication as a predicate offense for armed career criminal purposes."). Thus, where a charging document is narrowed to cover only conduct that qualifies as a violent felony under the ACCA, a guilty plea to the offense as charged suffices to establish the offense as an ACCA predicate. *Cf. In re Sealed Case*, 548 F.3d 1085 (D.C. Cir. 2008) (holding that prior guilty plea was not crime of violence where charging document described conduct that could qualify as both violent and nonviolent and the government had failed to furnish transcript showing the factual basis of the plea).

In our case, the charging document is sufficiently narrowed to the firearm provision. It is clear that White is being charged with aggravated assault under TENN. CODE ANN. § 39-13-102(a)(1)(B), even though the petition cites to the whole provision, § 39-13-102. The language in the petition tracks the language of § 102(a)(1)(B) and clearly identifies the gun as the reason for seeking an aggravated assault charge. The petition states that White committed an assault by "intentionally, knowingly, or recklessly . . . caus[ing] bodily injury to [victim]" and that it was aggravated because he "intentionally or knowingly did cause [victim] to reasonably fear imminent bodily injury by use of a deadly weapon: to wit, a handgun." The petition does not include any language indicating another basis for seeking the aggravated charge.

However, White here pleaded not guilty, expressly disclaiming the information in the charging document. The order of adjudication shows only that the juvenile judge found defendant guilty of aggravated assault, not the specific prong on which the conviction rested. This would be

analogous to a situation in which the government presented a narrowed charging instrument and a jury verdict but no jury instructions.

Other Circuits have held that a narrowly-drawn charging document suffices to establish the factual predicate of the conviction even without clarifying jury instructions or an admission of guilt. *See United States v. Lujan*, 9 F.3d 890 (10th Cir. 1993) (upholding ACCA enhancement where the government failed to furnish jury instructions and defendant was charged under a burglary statute that covered unlawful entry into both buildings and vehicles, but indictment made clear that defendant was being charged only with unlawful entry into a building, thus qualifying the conviction as a violent felony under the ACCA); *United States v. Vinton*, 631 F.3d 476, 486 (8th Cir. 2011) ("A precisely drawn charging document can indicate the basis for conviction whether or not the conviction was accompanied by an admission of guilt.").

And *Shepard* itself confirms that a narrowed charging document by itself would be sufficient to qualify a prior offense as a violent felony in any kind of case, whether guilt was admitted or not. After listing the documents that a court may consider in applying the ACCA, *Shepard* states, "With such materials in a pleaded case, a later court could generally tell whether the plea had necessarily rested on the fact identifying the burglary as generic, just as the details of instructions could support the conclusion in the jury case, *or the details of a generically limited charging document would do in any sort of case*." 544 U.S. at 20–21 (internal citation omitted) (emphasis added). The *Shepard* Court reiterated that a bench trial's findings and rulings would be necessary to confirm the factual basis of the conviction 'without a charging document that narrows the charge to generic limits." *Id.* at 25 (emphasis added). Here, we have such a narrowly drawn charging instrument; thus, the

charging petition and the fact of conviction alone are sufficient to determine that White's juvenile

conviction included the use of a handgun, qualifying it as a violent felony under the ACCA.

III

For the foregoing reasons, we AFFIRM the judgment of the district court.